[No. 31746-6-I. Division One. September 11, 1995.]

JOHN M. WOODLEY, ET AL., *Appellants*, v. BENSON & MCLAUGHLIN, P.S., ET AL., *Respondents*.

*Paul Taylor*, for appellants.
*Mary C. Eklund*, for respondent Benson & McLaughlin.
*Marvin L. Gray, Jr.*, for respondent Shaw.

BECKER, J. — John Woodley, convicted in federal court on charges of tax evasion and mail fraud, is also the defendant in a civil suit based on related allegations of misconduct. This appeal arises from John and Jane Woodley's action to recover a portion of their legal expenses from John Woodley's coconspirator and the coconspirator's employer. We hold the trial court did not err in dismissing the Woodleys' claim on summary judgment.

## I

Following Elizabeth Lynn's death in 1984, her estate passed to the Elizabeth Lynn Trust, benefiting her children, and the Elizabeth Lynn Foundation, a charitable organization. To serve as trustees of both the Trust and the Foundation, Lynn had named her attorney, John Woodley, and her accountant, Gerald Shaw. Shaw also served as personal accountant to John and Jane Woodley.

Lynn's estate included all of the stock in Imperial Bristlecone, Inc., a nursing home services provider. Shortly after Lynn's death, Woodley and Shaw altered corporate documents and fraudulently converted the Imperial Bristlecone stock to themselves. When Lynn's children discovered the conversion, Woodley agreed to "donate" his portion of the stock to the Lynn Foundation. Based on this purported charitable donation, the Woodleys took $250,000 in deductions on their federal income tax returns for the years 1985-88.

Woodley and Shaw were concerned that the Foundation's ownership of Imperial Bristlecone, a for-profit corporation, violated federal regulations and caused the Foundation to owe an excise tax. The two trustees proceeded to alter and backdate certain documents in order to cover up Woodley's donation and evade the tax. Also in connection with their management of the Foundation and Imperial Bristlecone, Woodley and Shaw wrongfully billed the United States for approximately $500,000 in Medicare and Medicaid payments.

In 1988, a federal grand jury began an extensive investigation into Woodley's and Shaw's management of

the Lynn Trust and the Lynn Foundation. Shaw thereupon relinquished his position as trustee. Thomas Stephens, a third trustee, filed a Petition for Removal of Trustee and Complaint for Damages against John and Jane Woodley (the "Stephens" complaint).

Shaw pleaded guilty to federal criminal charges of conspiring with Woodley to evade income taxes owed by Woodley and excise taxes owed by the Foundation. Woodley, indicted on similar charges, proceeded to trial in federal court. The jury found him guilty of four counts of tax evasion, four counts of filing false tax returns, and thirty-six counts of mail fraud. Woodley was sentenced to thirty months' imprisonment and ordered to pay approximately $273,000 in restitution and fines.[1]

While the criminal and civil actions against John Woodley were pending, John and Jane Woodley brought an independent action against Shaw and his employer, Benson & McLaughlin (hereafter Shaw), seeking contribution in the Stephens action and damages. Following John Woodley's conviction, Shaw moved for summary judgment. The Woodleys appeal from the trial court's order of dismissal.

## II

The Woodleys' complaint claimed unspecified damages resulting from Shaw's negligence in connection with his duties as the Woodleys' personal accountant. In light of John Woodley's criminal conviction, the Woodleys acknowledge that John Woodley is not entitled to recover on the complaint. The Woodleys maintain, however, that Jane Woodley also suffered damages as a result of Shaw's failure to advise her that the joint tax returns he prepared for her signature were fraudulent. On this basis, the Woodleys seek to recover Jane's half of the Woodley marital community's expenses in connection with both the criminal and civil actions against John. The issue presented is whether an innocent spouse, drawn into litiga-

---

[1]*See United States v. Woodley*, 9 F.3d 774 (9th Cir. 1993).

tion by the joint conduct of her husband and another wrongdoer, can recover from the other wrongdoer her half of community assets expended in defense of the litigation.

 "[W]hen the natural and proximate consequences of a wrongful act by defendant involve plaintiff in litigation with others, there may, as a general rule, be a recovery of damages for the reasonable expenses incurred in the litigation, including compensation for attorney's fees."[2] A claim for litigation expenses under this "ABC rule" has three necessary elements, set forth in *Manning v. Loidhamer*:[3]

> (1) a wrongful act or omission by A toward B; (2) such act or omission exposes or involves B in litigation with C; and (3) C was not connected with the initial transaction or event, *viz.*, the wrongful act or omission of A toward B.

The Woodleys claim the negligence of Shaw (Party A) caused Jane Woodley (Party B) to be involved in litigation with Stephens and the federal government (Parties C). Jane Woodley was a named defendant in the Stephens action, along with her marital community. Although she was not a target of the criminal investigation, she claims that fines, restitution, and legal expenses of John Woodley necessarily "involve" her half of the marital community's assets.

The parties primarily disagree as to whether the Woodleys raised sufficient evidence of causation to satisfy the second element of the *Manning* test. Jane Woodley's declaration states that if Shaw had advised her that the tax returns were improper or inaccurate, she would not have signed the returns and "they would not have been filed with the Internal Revenue Service in the manner in which they were." The Woodleys' "but for" argument presumes (1) that Jane would have been willing and able to put a stop to her husband's wrongdoing if Shaw had given her

---

[2]*Wells v. Aetna Ins. Co.*, 60 Wn.2d 880, 882, 376 P.2d 644 (1962).

[3]13 Wn. App. 766, 769, 538 P.2d 136, *review denied*, 86 Wn.2d 1001 (1975).

the chance; and (2) that but for the false tax returns, neither the federal government nor Stephens would have discovered and responded to the many improprieties in John Woodley's trusteeship. These inferences are not strong. Nonetheless, in the face of Jane Woodley's declaration, we hesitate to hold that cause in fact is absent as a matter of law.

"Cause in fact," however, is not the only element of proximate cause. "Legal causation" must also be present.[4] Legal causation depends on "mixed considerations of logic, common sense, justice, policy, and precedent."[5]

> Legal causation . . . rests on policy considerations as to how far the consequences of defendant's acts should extend. It involves a determination of whether liability should attach as a matter of law given the existence of cause in fact.[6]

The focus is whether, as a matter of policy, the connection between the ultimate result and the act of the defendant is too remote or insubstantial to impose liability.[7]

Proximate causation is generally a question for the jury. The situations in which a court decides that causation is absent as a matter of law are relatively rare. Where cause in fact is arguably present, a court should not make the decision to dismiss on summary judgment without articulating the "mixed considerations of logic, common sense, justice, policy, and precedent" that support such a decision. Several considerations compel us to conclude that Shaw's negligence in this case was not the legal cause of Jane Woodley's involvement in litigation.

First, in applying the *Manning* test, Washington courts require an exceptionally close causal nexus between Party B's exposure to litigation and the wrongful act or omission

---

[4]*Hartley v. State*, 103 Wn.2d 768, 779, 698 P.2d 77 (1985).

[5]*King v. City of Seattle*, 84 Wn.2d 239, 250, 525 P.2d 228 (1974) (quoting 1 Thomas A. Street, *Foundations of Legal Liability* 110 (1906)).

[6]*Hartley*, 103 Wn.2d at 779.

[7]*Hartley*, 103 Wn.2d at 781.

by Party A.[8] The required causal showing is greater than in an ordinary tort action. If Party A's conduct is not the only cause of Party B's involvement in the litigation, and particularly if Party B's own conduct contributed to Party B's exposure in the litigation, an action under *Manning* will not lie.[9] Here, the predominant cause of the Woodleys' legal expenses was the criminal and tortious conduct of John Woodley. The connection between Shaw's acts and the Woodleys' legal expenses is relatively weak.

Second, authorizing recovery of legal expenses in this context would create a broad new area of liability. Because of Washington's community property laws, one spouse is almost always named in litigation involving the other. The holding requested by the Woodleys would mean that every time an "innocent" spouse of a party was named in a three-party suit, the spouse could claim indemnity from one of the other parties on the theory that his or her own conduct did not provoke the litigation. Allowing one spouse to recover legal expenses incurred through another spouse's wrongdoing would promote arbitrary and inequitable results. In many cases, a joint tortfeasor's liability for legal expenses would depend on whether other joint tortfeasors were married. Through creative use of Washington's community property laws, criminal and civil wrongdoers would be able to shift to third parties the legal expenses resulting from their wrongdoing.

Third, community liability for the torts of a spouse is premised on the idea that the wrongdoing spouse undertook his or her acts for the benefit of the community.[10] It is fair that the expenses of litigation arising from such torts should likewise accrue against the marital com-

---

[8]*Tradewell Group, Inc. v. Mavis*, 71 Wn. App. 120, 127-29, 857 P.2d 1053 (1993); *Western Community Bank v. Helmer*, 48 Wn. App. 694, 701, 740 P.2d 359 (1987) (no award of fees where Party A's omission was not "the sole reason" Party B became involved in litigation).

[9]*Mavis*, 71 Wn. App. at 128-29; *see also Aldrich & Hedman, Inc. v. Blakely*, 31 Wn. App. 16, 20, 639 P.2d 235, *review denied*, 97 Wn.2d 1007 (1982).

[10]*De Elche v. Jacobsen*, 95 Wn.2d 237, 622 P.2d 835 (1980).

munity. It would be incongruous to allow tort recovery against the community, while at the same time allowing the community to shift part of the burden for its legal fees to a third party. Such a rule would allow the "innocent" spouse to reap the benefits of the wrongdoing spouse's misconduct and yet be protected from the costs of litigation resulting from the misconduct.

Finally, we find no precedent for the proposition that a party may recover legal expenses incurred as a result of his or her spouse's intentional wrongdoing as an element of tort damages in an action against a third party. The two cases cited by the Woodleys, *Federated Am. Ins. Co. v. Strong*[11] and *Vasey v. Snohomish County*,[12] do not support this proposition. *Strong* held that under the specific terms of an insurance contract, a wife's intentional wrongdoing did not excuse the insurer of its duty to compensate an innocent husband for damages to his car. In *Vasey*, the court recognized that under Washington's comparative negligence statute, the negligence of one spouse may not be imputed to another in an action for damages. Neither of these cases is an action to recover expenses of litigation with a third party, and neither addresses the attendant issue of proximate causation.

Jane Woodley was not exposed to any separate liability or expenses as a result of Shaw's alleged negligence. In effect, the Woodleys ask to extend the *Manning* rule to a situation where "A's" wrongful conduct involved "B's" *spouse* in litigation with "C", thereby causing "B's" *marital community* to incur legal expenses. We conclude that to award attorney fees here would be to extend the principle "far beyond its present applicability."[13] Accordingly, we hold that the Woodleys have failed to show legal

---

[11]102 Wn.2d 665, 689 P.2d 68 (1984), *partial abrogation recognized by Safeco Ins. Co. v. Butler*, 118 Wn.2d 383, 402-03, 823 P.2d 499 (1992).

[12]44 Wn. App. 83, 721 P.2d 524 (1986).

[13]*Helmer*, 48 Wn. App. at 700.

cause and thus have not satisfied the second prong of the *Manning* test.

The trial court's dismissal of the Woodleys' action for damages is affirmed.

A majority of the panel has concluded that the remainder of this opinion lacks precedential value. Therefore only the foregoing will be published. The opinion shall be filed for public record as provided in RCW 2.06.040.

AGID and WEBSTER, JJ., concur.

Review denied at 128 Wn.2d 1021 (1996).