[No. 46238-5-I. Division One. May 29, 2001.]

PATRICK J. GEORGE, ET AL., *Appellants*, v. FARMERS INSURANCE COMPANY OF WASHINGTON, *Respondent*.

432

*Steven W. Klug* (of *Lundberg Kristof Klug & Torrance*), for appellants.

*Sidney R. Snyder, Jr.* (of *Merrick, Hofstedt & Lindsey, P.S.*), for respondent.

KENNEDY, J. — Patrick and Kolleen George appeal the summary judgment dismissing their claims against Farmers Insurance Company of Washington. The Georges sought a declaratory judgment that their homeowners policy provided liability coverage for injuries sustained by their neighbor while doing repairs on the Georges' motor home, alleged that Farmers denied coverage in bad faith, and requested attorney fees, costs and extracontractual damages arising from the denial of coverage. The Georges' policy excluded coverage for bodily injuries that arise out of

the "ownership, maintenance, use, loading or unloading of" a motor vehicle owned by an insured. But the policy further provided that a motorized land vehicle that is "used only on an insured location and not subject to motor vehicle registration" is not a "motor vehicle" for purposes of the exclusion from coverage. During the coverage period, the Georges' motor home was not moved from the insured location, and we conclude that it was not subject to registration during the coverage period because it had not been driven on the public highways of this state during that period. Accordingly, the Georges are entitled to a declaratory judgment that their homeowners policy provided them with liability coverage for the injury to their neighbor. The trial court appears not to have reached the bad faith claim, in view of its dismissal on other grounds. Accordingly, the summary judgment is reversed and that claim is remanded for initial consideration by the trial court. The Georges are not precluded as a matter of law from seeking extra-contractual damages as a result of the denial of coverage. In sum, we reverse the entire summary judgment and remand for such further proceedings as shall be consistent with this opinion. The Georges are entitled to reasonable attorney fees incurred below and for this appeal with respect to their claim of coverage.

## FACTS

The Georges purchased a homeowners insurance policy from Farmers Insurance Company of Washington (Farmers) that was in effect from June 9, 1997 through June 9, 1998. The policy specifies that bodily injuries and property damages are not covered if they arise out of the "ownership, maintenance, use, loading or unloading of a motor vehicle owned by an insured." Under the policy, a "motor vehicle" is "a motorized land vehicle, including a trailer . . . designed for travel on public roads." However, a motorized land vehicle that is "used only on an insured location and not subject to motor vehicle registration" is not a "motor vehicle" under the policy. Thus, the policy insured the Georges

against liability arising out of the ownership, use, or operation of motor vehicles that were "used only on the insured property and not subject to registration."

In 1995, prior to obtaining the homeowners policy from Farmers, the Georges purchased a 1972 Dodge Sundi motor home. The motor home was not registered for operation on the public highways at that time, and had not been registered since 1993. The Georges obtained a permit from the Department of Licensing to move the vehicle from its point of purchase to their residence. On two occasions, in December of 1995 and January of 1996, during a period of flooding, the Georges moved the motor home from their property to a nearby bridge, without a permit, to protect it from flood damage. The Georges did not register the motor home at any time.

It is undisputed that the motor home was not moved from the Georges' residence after the flooding in January of 1996, through November 1997, when the accident underlying this claim occurred.

On November 2, 1997, Mr. George attempted to do some repair work on the motor home with the aid of his neighbor, Harvey Howard. Mr. George and Mr. Howard worked on the engine compartment of the motor home while the motor home remained at the insured location. While Mr. Howard stood in front of the motor home, Mr. George turned the starter switch key and the motor home lurched forward, injuring Mr. Howard.

Mr. George reported the incident to Farmers, contending that his homeowners policy provided liability coverage for Mr. Howard's injuries. According to Mr. George, Farmers' adjuster, Shannon Hayes, advised him that there was "no coverage for any motor vehicle accident under [the] policy." Mr. George claims that Ms. Hayes did not acknowledge that the motor vehicle exclusion contained in the policy did not pertain to any "motorized land vehicle used only on an insured location and not subject to motor vehicle registration." Ms. Hayes informed Mr. George that she had told Mr. Howard that the Georges did not have coverage for the

accident, and that she had instructed Mr. Howard to file an uninsured motorist claim with his own automobile insurance company.

Farmers' denial of coverage was confirmed in a letter dated December 17, 1997, on the asserted basis that the policy did not apply to "an auto accident" and did not cover a "motor vehicle owned or operated by . . . an insured."

In January of 1998, after the Georges retained legal counsel, Farmers agreed to conduct an investigation into the facts relevant to whether the motor home was included or excluded from the policy definition of a "motor vehicle." Farmers' investigation allegedly consisted solely of obtaining a sworn statement from Mr. George. In his subsequent deposition, Mr. George testified that the motor home was never driven away from the Georges' residence—the insured location—from the inception of the one-year coverage period until and including the date on which Mr. Howard was injured. Mr. George also disclosed that the motor home had been driven elsewhere than at the insured location three times prior to the coverage period: once in 1995, when the Georges transported it from the point of purchase under a permit from the Department of Licensing, and twice without a permit during two floods, once in December 1995, and once in January 1996.

On June 9, 1999, Mr. George received a notice of an order of suspension from the Department of Licensing. The notice stated that the Department had received information that he was the driver of an uninsured vehicle involved in an accident on November 2, 1997. The notice further informed Mr. George that his driver's license would be suspended on August 8, 1999, unless he could prove, among other things, that he had liability insurance that was in effect for the involved vehicle.

Mr. George was granted an informal administrative interview regarding the suspension, which took place on August 18, 1999. The purpose of the informal interview was to determine whether the license suspension proceeding would continue. On September 8, 1999, Department of

Licensing hearing officer L.R. English sent Mr. George's attorney a letter stating, "It is my belief that Mr. George's motor home is subject to registration under the motor vehicle laws of this state (RCW 46.29.060)[.]" The letter further informed Mr. George, that a "new Order of Suspension with a new effective date" would be mailed to him, and that he could request a formal hearing with the Department of Licensing if he chose to challenge the hearing officer's decision. Mr. George maintains that, as of the time of this appeal, the Department of Licensing has not issued a new order of suspension, and has not afforded him a formal hearing.

On September 14, 1999, the Georges filed a complaint for declaratory relief in King County Superior Court, seeking a judgment declaring (1) that their Farmers homeowners policy provided coverage for Mr. Howard's injuries, and (2) that Farmers was liable for all foreseeable damages suffered by the Georges, including legal expenses incurred enforcing the policy and resisting the Department of Licensing's license suspension action. The Georges also averred that they had been denied coverage in bad faith.

On January 7, 2000, Farmers moved for summary judgment dismissing the Georges' complaint, contending that the Georges were not entitled to coverage for Mr. Howard's injuries under the policy. Farmers argued two grounds in support of their denial of coverage: (1) the fact that the Georges had driven the motor home away from the insured location on three occasions prior to the coverage period meant that it had not been used "only on the insured location" and was "subject to motor vehicle registration" and, thus, was not covered under the policy, and (2) the Georges were collaterally estopped from claiming that the motor home was not "subject to motor vehicle registration" within the meaning of the policy because the Department of Licensing hearing examiner issued a "final judgment" to the contrary, or, in the alternative, that the court should defer to the hearing examiner's conclusion on the matter. Farmers also argued that the Georges' bad faith claim

should be dismissed on summary judgment, contending that Farmers' conduct had been reasonable.

On February 4, 2000, the trial court dismissed the Georges' complaint with prejudice and without costs. The Georges timely appealed the order.

## DISCUSSION

Standard of Review

We may affirm an order granting summary judgment if there are no genuine issues of material fact and the moving party is entitled to judgment as a matter of law. CR 56(c); *Hutchins v. 1001 Fourth Ave. Assocs.*, 116 Wn.2d 217, 220, 802 P.2d 1360 (1991). All facts and reasonable inferences must be considered in the light most favorable to the nonmoving party. *Hansen v. Friend*, 118 Wn.2d 476, 485, 824 P.2d 483 (1992). In reviewing the trial court's decision regarding a motion for summary judgment, this court must engage in the same inquiry as the trial court. *Wendle v. Farrow*, 102 Wn.2d 380, 383, 686 P.2d 480 (1984). A summary judgment may not be granted unless there is no genuine issue as to any material fact. *Id.*

Motor Vehicle Exclusion

The policy at issue here excludes bodily injury or property damage arising out of the use of a motor vehicle owned or operated by or rented or loaned to an insured. The policy defines a motor vehicle as:

8. **Motor vehicle** means:

a. a motorized land vehicle, including a trailer, semi-trailer or motorized bicycle, designed for travel on public roads.

b. any other motorized land vehicle designed for recreational use off public roads.

c. any vehicle while being towed by or carried on a vehicle described in 8a.

None of the following is a **motor vehicle**:

d. a motorized golf cart while used for golfing purposes.

e. a motorized land vehicle used only on an **insured**

**location** and not subject to motor vehicle registration.

f. a watercraft, camp, home or utility trailer not being towed or carried on a vehicle described in 8a.

Clerk's Papers at 27 (Homeowners Policy).

The parties agree that the only definition relevant here is 8(e)—"a motorized land vehicle used only on an **insured location** and not subject to motor vehicle registration."

We first consider whether the language "used only on an **insured location** and not subject to motor vehicle registration" is ambiguous. Farmers argues that it is not ambiguous and that it clearly pertains to uses of the vehicle prior to the period in which the policy was in effect. Conversely, the Georges argue that the term is ambiguous and that it would be ordinarily understood to pertain only to uses of the vehicle during the coverage period.

■ ■ The interpretation of an insurance policy is a question of law, which we review de novo. *Pub. Util. Dist. No. 1 v. Int'l Ins. Co.*, 124 Wn.2d 789, 797, 881 P.2d 1020 (1994). In construing the language of an insurance policy, the policy should be given a fair, reasonable, and sensible construction as would be given to the contract by the average person purchasing insurance. *E-Z Loader Boat Trailers, Inc. v. Travelers Indem. Co.*, 106 Wn.2d 901, 907, 726 P.2d 439 (1986) (citing *Morgan v. Prudential Ins. Co. of Am.*, 86 Wn.2d 432, 545 P.2d 1193 (1976)).

■ Exclusionary clauses are narrowly construed for the purpose of providing maximum coverage for the insured. *McDonald Indus., Inc. v. Rollins Leasing Corp.*, 95 Wn.2d 909, 914-15, 631 P.2d 947 (1981) (quoting 12 GEORGE J. COUCH, CYCLOPEDIA OF INSURANCE LAW § 45:125 (2d ed. 1964)). Ambiguous insurance clauses should be construed against the drafter, particularly when the insurer is attempting to exclude coverage. *Nationwide Mut. Ins. Co. v. Kelleher*, 22 Wn. App. 712, 715, 591 P.2d 859 (1979). Where policy language is "clear and unambiguous" and not fairly susceptible to two different reasonable interpretations, however, courts may not create an ambiguity. *Kitsap*

*County v. Allstate Ins. Co.*, 136 Wn.2d 567, 576, 964 P.2d 1173 (1998) (citing *Am. Star Ins. Co. v. Grice*, 121 Wn.2d 869, 874, 854 P.2d 622 (1993)). But the purpose of insurance is to give protection and it can be presumed that such was the intent of the parties. Exclusions are contrary to this basic intent, and thus should not be extended beyond their clear and unequivocal meaning. *McDonald Indus., Inc.*, 95 Wn.2d at 915 (citing COUCH § 15:80).

■ Where terms are undefined, they "must be given their 'plain, ordinary, and popular' meaning." *Kitsap County*, 136 Wn.2d at 576 (quoting *Boeing Co. v. Aetna Cas. & Sur. Co.*, 113 Wn.2d 869, 877, 784 P.2d 507 (1990)).

■ We conclude that the portion of the definition here at issue that reads "used only on an insured location" can only mean during the period of coverage, for until there is coverage, there can be no "insured location" for purposes of the policy. Thus we conclude that under the plain language of this policy, the Georges' motor home was used only on an insured location within the meaning of the policy because it was used only at the insured location during the policy period. But to be excluded from the definition of "motor vehicle" a motorized land vehicle must be both "used only on an insured location" and "not subject to motor vehicle registration." And so we examine that clause, as well.

■ The purpose of the "motor vehicle" exclusion in the policy is to limit the risks to Farmers during the relevant coverage period. The policy is silent regarding the precoverage use or registration status of a "motorized land vehicle." Indeed, there is no logical or apparent connection between use or registration status of a motorized land vehicle before the relevant coverage period and the risks faced by Farmers during the relevant coverage period. Because neither precoverage use nor precoverage registration of a vehicle has any bearing on the risks borne by the insurer, the average purchaser of insurance would have no reason to understand the policy to refer to precoverage use and registration; rather, such a purchaser of insurance

would fairly and reasonably construe the definition to mean use and registration during the period the policy is in effect. We thus conclude that both phrases contained in the definition of what is not a motor vehicle refer to the period of coverage and not to any earlier time.

That still leaves the inquiry of whether the term "subject to registration" means "capable" of being registered, as Farmers contends, or "required" to be registered, as the Georges contend. According to *Webster's Third New International Dictionary* 2275 (1969), the verb form of "subject" means "to put under[,] . . . to bring under control or dominion[,] . . . to make liable[,] . . . to cause to undergo or submit to[.]" These are terms of requirement, obligation and necessity. "Subjectable," on the other hand, is defined as "capable of being made subject." *Id.* The term "subject to registration" is, therefore, most logically construed to mean that, under the law, the vehicle owner *must* register the vehicle—not that the owner *could* register the vehicle or that the vehicle could be used in such a way that registration would be required. Moreover, to the extent that the phrase is reasonably susceptible to either meaning, it is ambiguous and must be construed against Farmers.

The parties agree that the Georges' motor home never left their insured premises during the relevant coverage period. And, for the reasons stated in the section of this opinion dealing with Farmers' claim of collateral estoppel, we conclude that the motor home was not subject to registration during the coverage period because it was not being driven on the public highways of this state during the coverage period. Therefore, Farmers incorrectly denied the Georges' claim of coverage, for the Georges' motor home was not a "motor vehicle" as defined by the policy. The trial court erred in granting summary judgment on this issue to Farmers and in denying the Georges' request for a declaratory judgment that their homeowners policy provided coverage for the injury to their neighbor.

Collateral Estoppel

Farmers nevertheless contends that the doctrine of col-

lateral estoppel operates to preclude the Georges from arguing that the vehicle was not subject to motor vehicle registration under RCW 46.16.010(1), for the purpose of determining coverage under their insurance policy because the hearing examiner concluded that the Georges' motor home was subject to registration under RCW 46.29.060.

RCW 46.16.010 states,

> (1) It is unlawful for a person to operate any vehicle over and along a public highway of this state without first having obtained and having in full force and effect a current and proper vehicle license and display vehicle license number plates therefor as by this chapter provided. Failure to make initial registration before operation on the highways of this state is a misdemeanor, and any person convicted thereof must be punished by a fine of no less than three hundred thirty dollars, no part of which may be suspended or deferred.
>
> Failure to renew an expired registration before operation on the highways of this state is a traffic infraction.[1]

RCW 46.29.060, the financial responsibility act, requires a driver of "any vehicle of a type subject to registration under the motor vehicle laws of this state" to provide proof of insurance or financial security after an injury accident has occurred, failing which the driver's license will be suspended. The Legislature intended the financial responsibility act to give monetary protection to persons injured through the negligent use of the highways or by the negligent use of the highways by others. *Mut. of Enumclaw Ins. Co. v. Wiscomb*, 97 Wn.2d 203, 207, 643 P.2d 441 (1982) (citing *LaPoint v. Richards*, 66 Wn.2d 585, 590, 403 P.2d 889 (1965)).

The elements of collateral estoppel are well known: (1) identical issues; (2) a final judgment on the merits; (3) the party against whom the plea is asserted must have been a party to or in privity with a party to the prior adjudication; and (4) application of the doctrine must

---

[1] RCW 46.16.010 has recently been amended to increase the monetary penalty for a violation, and the section above quoted has been reworded slightly. None of the amendments affect the issue on appeal.

not work an injustice on the party against whom the doctrine is to be applied. *Southcenter Joint Venture v. Nat'l Democratic Policy Comm.*, 113 Wn.2d 413, 418, 780 P.2d 1282 (1989) (quoting *Shoemaker v. City of Bremerton*, 109 Wn.2d 504, 507, 745 P.2d 858 (1987)). The burden of establishing these elements is on the party asserting the doctrine. *Luisi Truck Lines v. Util. & Transp. Comm'n*, 72 Wn.2d 887, 894, 435 P.2d 654 (1967). All of the elements must be shown; therefore, if any one element fails the doctrine does not apply. *Southcenter*, 113 Wn.2d at 418.

 Decisions of administrative tribunals may have preclusive effect under Washington law. *Luisi Truck Lines*, 72 Wn.2d at 894. "When an administrative agency is acting in a judicial capacity and resolves disputed issues of fact properly before it which the parties have had an adequate opportunity to litigate, the courts have not hesitated to apply *res judicata* to enforce repose." *United States v. Utah Constr. & Mining Co.*, 384 U.S. 394, 422, 86 S. Ct. 1545, 16 L. Ed. 2d 642 (1966); *accord Stevedoring Servs. of Am., Inc. v. Eggert*, 129 Wn.2d 17, 40, 914 P.2d 737 (1996); *State v. Dupard*, 93 Wn.2d 268, 274, 609 P.2d 961 (1980).

 The hearing examiner's opinion letter cannot be given collateral estoppel effect because all the requisite elements of estoppel are not satisfied. First, it is not at all clear that the hearing examiner addressed the same issue that is before this court, and that is whether the motor home was subject to registration, that is, was required to be registered, even though it was not being driven on the public highways of this state during the relevant time period, that being the period of coverage under the policy. The vehicle was not required to be registered under RCW 46.16.010 because it was not being operated on the highways of this state, and Farmers has pointed to no other statute that requires a vehicle to be registered if it is not being operated on our highways. The hearing examiner was construing a different statute, RCW 46.29.060, the financial responsibility statute, under which the driver's license of the driver and owner of a vehicle "of a type subject to

registration" under the motor vehicle laws can be suspended if the vehicle is involved in an injury accident, unless the vehicle is covered by liability insurance or there is other proof of sufficient financial security. Without so holding, we think it within reason that a vehicle could be subject to the financial security laws because it is "of a type subject to registration" insofar as it is designed for operation on the public highways, and yet not actually be subject to registration under RCW 46.16.010, and within the meaning of the homeowners policy here at issue, because it is not, in fact, being driven on the public highways at the relevant time. Farmers' policy does not exclude from the definition of motor vehicles those motorized land vehicles that are "of a type" subject to registration but rather those that are in fact subject to registration.

 Even if the issues were identical, however, collateral estoppel still would not be applicable because the hearing examiner made no final judgment on the merits. Instead, Mr. George participated in an informal interview with the hearing examiner who thereafter rendered an opinion that the license suspension proceeding should go forward because the financial responsibility laws were applicable to this accident, and who stated in the opinion letter that the Department of Licensing would send Mr. George a new order of suspension with a new effective date, and that he could request a formal hearing with the Department of Licensing. If that formal hearing has ever taken place, it is not of record in this appeal. This being so, we need not examine the issue of collateral estoppel further. Farmers' contention fails.

Neither are we inclined to give deference to the hearing examiner's opinion. The examiner's letter contains a bare legal conclusion that is unsupported by any legal analysis whatsoever. Moreover, not only is it unclear whether the examiner was dealing with the same issue as is before us, but if the examiner was dealing with the same issue, we disagree with his conclusion for the reasons stated in this opinion—the Georges' motor home was not required to be

registered within the meaning of the Georges' homeowners insurance policy because it was not being driven on the public highways of this state during the policy period. Finally, as a legal conclusion, the hearing examiner's letter is not properly in evidence for purposes of summary judgment.

## Attorney Fees and Extra-Contractual Damages

The Georges contend that the trial court erred in dismissing their claim for attorney fees that they incurred in resisting the license suspension action. The parties disagree about whether such an action is allowable under traditional equitable principles, i.e., Washington's so-called "ABC rule."

 The ABC rule is a rule of equity that allows a plaintiff to recover damages for reasonable expenses incurred in a prior litigation against a third party when that action was a natural and proximate consequence of the defendant's wrongful act or omission. *Woodley v. Benson & McLaughlin, P.S.*, 79 Wn. App. 242, 246, 901 P.2d 1070 (1995). The plaintiff must satisfy three elements to establish this equitable right to attorney fees: (1) a wrongful act or omission by A toward B; (2) such act or omission exposed or involved B in litigation with C; and (3) C was not connected with the wrongful act or omission of A toward B. *Id.* (quoting *Manning v. Loidhamer*, 13 Wn. App. 766, 769, 538 P.2d 136 (1975)). To demonstrate proximate cause under the ABC rule, the expense of the prior litigation must have been reasonably incurred, that is, the prior litigation must have been conducted in good faith and with reasonable grounds to believe that it would have a successful outcome. 22 AM. JUR. 2D *Damages* § 620 (1988).

Contrary to Farmers' assertion, the ABC rule has been applied in the insurance context before. *See Aldrich & Hedman, Inc. v. Blakely*, 31 Wn. App. 16, 639 P.2d 235 (1982). Farmers fails to show as a matter of law that the rule cannot properly be applied in this case. Accordingly, summary judgment on this issue was improper. We therefore reverse the trial court's dismissal of the Georges' claim

for equitable recovery of expenses incurred in resisting the licensing revocation action.

 In addition, as the prevailing party with respect to the coverage issue, the Georges are entitled to attorney fees and costs below, as well as on appeal pursuant to RAP 18.1. *Olympic S.S. Co. v. Centennial Ins. Co.*, 117 Wn.2d 37, 53, 811 P.2d 673 (1991).

Finally, the Georges assign error to the trial court's dismissal of their claim that Farmers improperly conducted its investigation of their claim of coverage and ultimately denied coverage in bad faith. It is not clear from the record whether the trial court ever reached this claim. We think it likely that it did not, in that the court erroneously concluded that there was no coverage, and the duty to indemnify (as opposed to the duty to defend) hinges on the insurer's actual liability to the insured. *Hayden v. Mut. of Enumclaw Ins. Co.*, 141 Wn.2d 55, 64, 1 P.3d 1167 (2000). Accordingly, we reverse and remand the summary judgment on this claim and remand for consideration by the trial court.

In sum, the order granting summary judgment to Farmers dismissing the Georges' complaint is reversed and remanded for such further proceedings as shall be consistent with this opinion. The Georges are awarded their reasonable attorney fees for their appeal of the coverage issue, in accord with the applicable Rules of Appellate Procedure.

ELLINGTON, J., concurs.

GROSSE, J. (dissenting) —I must part company with the majority over its interpretation of the phrase "subject to motor vehicle registration." I see no ambiguity in this phrase whatsoever. It means that under the law the vehicle can and must be registered if it is to be used in the jurisdiction. In the context of legal drafting, the phrase "subject to" is used to mean that a thing or subject matter is governed by or predicated on some other thing or subject

matter, usually a law, rule, or provision. And, while a leading legal lexicographer considers it a redundancy and its use an example of poor draftsmanship that does not mean it is ambiguous.[2] Moreover, in the context of this insurance policy it is clear that the phrase is intended to refer to motor vehicles of a class and kind that must be registered. This motor home was such a vehicle.

That the owners chose not to register it is of little moment in the context of this case. What is clear is that Farmers Insurance Company did not intend to extend homeowners coverage to motor vehicles of any kind unless, and only unless, the specific exceptions applied. Coverage extends only to those vehicles not of the class and kind that can be registered, and only if they are used on the insured location. In the State of Washington the best example might be that of farm vehicles. They are not subject to motor vehicle registration. If they are used only on the insured location they would appear to be covered. This is a perfectly rational limitation on exposure by the underwriters. The range of possible activities is limited, as is the scope of the population put at risk by that operation. As the facts of this case illustrate, there is a greater risk with regard to motor vehicles subject to registration. They are of the kind that can be and normally are used on the public highways. Frequently they are used even if not registered. And their use entails greater risk given their nature.

From my perspective the above analysis would end this case. There is no need to discuss potential problems with the second part of the exception limiting coverage to vehicles used only on the insured location. However, I will note my agreement with the majority that at the very least this means use during the policy period. However, I might go even further and not allow this restriction to bar incidental use off the insured premises in case of an emergency putting the property at issue at risk, such as a flood, or a use necessary to the principal use such as operating the

---

[2] Bryan A. Garner, A Dictionary of Modern Legal Usage 840 (2d ed. 1995).

farm tractor on a neighbor's land for purposes of accessing the insured premises. But that is not this case.

I would affirm.