[No. 33028-8-II.   Division Two.   March 7, 2006.]

SEATTLE AREA PLUMBERS, HOUSING PLUMBERS, PIPEFITTERS, REFRIGERATION, AND MARINE PIPEFITTERS APPRENTICESHIP COMMITTEE ET AL., *Appellants,* v. THE WASHINGTON STATE APPRENTICESHIP AND TRAINING COUNCIL ET AL., *Respondents.*

*Kristina M. Detwiler* (of *Rinehart & Robblee*), for appellants.

*Robert M. McKenna, Attorney General,* and *Leslie V. Johnson* and *Judith C.W. Morton, Assistants*; and *Judd H. Lees,* for respondents.

¶1 VAN DEREN, J. — Union affiliated apprenticeship sponsors[1] (collectively the Objectors) appeal the Washington State Apprenticeship and Training Council's (Council)[2] decision to allow the nonunion affiliated Construction Industry Training Council (CITC) to expand the geographic area in which it provides plumber apprenticeship training. The Objectors argue that (1) the Council may only approve apprenticeship programs that comply with Council regulations and this one does not, (2) the Council's erroneous evidentiary rulings denied the Objectors a full hearing, (3) the Council has treated expansion requests inconsistently, and (4) we should award them their attorney fees and costs on appeal. Holding that the Council properly limited arguments to issues affected by CITC's geographic expansion but that it erroneously excluded discovery and evidence from the Objectors relating to the need for the apprenticeship program in the expanded geographic area, we vacate the Council's May 14, 2004 approval of the geographic expansion proposed by CITC and remand for further proceedings before the Council. We also award reasonable attorney fees and costs to the Objectors under RCW 4.84.350(1).

---

[1] Seattle Area Plumbers, Housing Plumbers, Pipefitters, Refrigeration, and Marine Pipefitters Apprenticeship Committee; Southwest Washington Pipe Trades Apprenticeship Committee; and Eastern Washington-Northeast Oregon Pipe Trades Apprenticeship Committee.

[2] The Council is the nominal party in interest and a named respondent along with the Department of Labor and Industries (Department), its administrative arm. Only the Department filed a "Brief of Respondent Department of Labor and Industries," and they represent the Council in this appeal.

## BACKGROUND

¶2 The legislature established the Council to enact rules and govern the standards of vocational apprenticeship training programs to train participants for skilled trades such as large equipment operation, carpentry, electrical work, and plumbing. RCW 49.04.010; ch. 296-05 WAC. These training programs involve both practical, "hands on" experience and classroom instruction. The Council's primary responsibility is to evaluate, approve, and register proposed programs. WAC 296-05-300. The Department of Labor and Industries (Department) assists organizations in developing apprenticeship programs in compliance with chapter 49.04 RCW and chapter 296-05 WAC. RCW 49.04.030; WAC 296-05-107.

¶3 In order to form a state-recognized apprenticeship program in Washington, an organization must first organize a training committee and obtain Council approval of the committee. RCW 49.04.040; WAC 296-05-300(1). Once approved, the committee creates and submits proposed apprenticeship standards to the Council for approval. WAC 296-05-300(2).

¶4 In 1999, following administrative hearings it held in 1998, the Council approved CITC's apprenticeship standards for its plumbing and pipe fitting program in western Washington.[3]

¶5 In November 2003, CITC applied for approval to expand its apprenticeship training program to the entire state of Washington. The Department recommended approval of the expansion request.

¶6 The Objectors formally objected to CITC's proposal. They argued that the expansion would bring CITC into direct competition with their programs and that the existing CITC program did not meet the requirements for apprenticeship programs. Specifically, the Objectors raised

---

[3] The approved western Washington program did not include five southwestern counties.

the following issues concerning CITC's proposed expansion: (1) need for the apprenticeship program in the enlarged area, (2) ratio of apprentices to journey level workers, (3) apprenticeship wages and wage progression, (4) related supplemental instruction (RSI), (5) committee composition, (6) work processes, (7) administrative/disciplinary procedures, (8) minimum qualifications, (9) conduct of the program under the Equal Employment Opportunity (EEO) plan, and (10) the initial probationary period.

¶7 The Council initially heard from the Objectors at the Council's January 15, 2004 quarterly meeting. The Objectors requested that the Council either set the matter over to a later meeting or refer it to an administrative law judge (ALJ). The following day, the Council set a special meeting to hear from the Objectors, but it stated that it would limit the scope of the special meeting to CITC's proposed geographic expansion.

¶8 Before the scheduled hearing, the Council issued a prehearing order limiting the scope of the hearing that stated:

> [T]he issues to be addressed and the evidence to be presented in this hearing will be limited to CITC's Plumbers geographical standards. As the only item in CITC's standards being proposed for revision is the geographical standard, that is the only issue subject to objection, and the only issue relating to which the Council will hear evidence at this hearing. The Council will consider whether the revision of the geographical standard of CITC's program complies with RCW 49.04.050 and WAC 296-05-316. Any program standards already approved by the Council which are not affected by the revision of the geographical standard will not be reconsidered by the Council at this hearing.

Administrative Record (AR) at 59.

¶9 The Objectors requested clarification of the order. In response, the Council issued a second prehearing order stating:

> The Council will permit evidence on the effect of the revision of the area of geographic coverage of the standards on the

provision of related and supplemental instruction, how the program sponsor will deal with disciplinary actions that arise out of the revision of the geographical standard (e.g. missed hours of related and supplemental instruction due to travel requirements), and changes that may occur in the EEO plan due to the change in geographic revision. Because ratio, wage progression, committee composition, work processes, minimum qualifications, and initial probationary period are not effected [sic] by the geographic revision, the Council considers evidence regarding those items in the CITC standards to be irrelevant.

AR at 77. The Council did not, in either order, require CITC to demonstrate that the expanded area had a need for the proposed program. *See* WAC 296-05-316(2)(c).

¶10 The Objectors served CITC with a subpoena duces tecum for all documents relating to the need for an expanded program and to CITC's retention rate. CITC moved to quash the subpoena and the Council granted CITC's motion, ruling that the requested documents fell outside the scope of the hearing.

¶11 The Council conducted the hearing on February 23, 2004. It ruled that the Objectors could not address the issues of need, retention rate, minimum qualifications, committee composition, probationary period, ratio, wage progression, or work processes. But it allowed the Objectors to present evidence on RSI, administrative/disciplinary procedures, and the EEO plan to the extent that those areas were affected by the geographic expansion.

¶12 In addition to their objections to CITC's specific expansion request, the Objectors argued that the Council had treated other expansion requests inconsistently. The Objectors pointed to an expansion request by the Inland Pacific Chapter of Associated Builders and Contractors (IPC/ABC), where the Council allowed objecting parties to submit evidence about IPC/ABC's program standards. CITC objected to the argument, stating that the circumstances in that case differed because in the IPC/ABC case, there were outstanding complaints regarding the existing program. Over objection, the Council allowed the Objectors

to submit the Council's findings of facts, conclusions of law, and order from the IPC/ABC hearing for its consideration.

¶13 The Council issued a final administrative order allowing CITC's expansion. The Objectors petitioned for judicial review, and the superior court affirmed the Council's ruling. The Objectors timely appeal.

## ANALYSIS

### I. STANDARD OF REVIEW

¶14 The Administrative Procedure Act (APA), codified in RCW 34.05.570(3), governs our review of agency adjudicatory actions. It states in pertinent part:

> Review of agency orders in adjudicative proceedings. The court shall grant relief from an agency order in an adjudicative proceeding only if it determines that:
>
> . . . .
>
> (c) The agency has engaged in unlawful procedure or decision-making process, or has failed to follow a prescribed procedure;
>
> (d) The agency has erroneously interpreted or applied the law;
>
> (e) The order is not supported by evidence that is substantial when viewed in light of the whole record before the court, which includes the agency record for judicial review, supplemented by any additional evidence received by the court under this chapter.
>
> . . . .
>
> (h) The order is inconsistent with a rule of the agency unless the agency explains the inconsistency by stating facts and reasons to demonstrate a rational basis for inconsistency; or
>
> (i) The order is arbitrary or capricious.

RCW 34.05.570(3).

¶15 The party challenging an agency's action must prove the decision's invalidity, and our review is limited to the agency record. RCW 34.05.570(1)(a), .558; *Port of Seattle v. Pollution Control Hearings Bd.*, 151 Wn.2d 568, 587, 90 P.3d 659 (2004). But we may consider evidence before the superior court if the superior court reviewed additional

evidence outside the administrative record. *Seattle Bldg. & Constr. Trades Council v. Apprenticeship & Training Council*, 129 Wn.2d 787, 799, 920 P.2d 581 (1996). We may grant relief to the petitioner based on an agency's erroneous interpretation of the law or an agency decision that is arbitrary or capricious. *Pub. Util. Dist. No. 1 of Pend Oreille County v. Dep't of Ecology*, 146 Wn.2d 778, 790, 51 P.3d 744 (2002).

■■■ ¶16 We review the Council's interpretation of statutes under an error of law standard, "which allows an appellate court to substitute its own interpretation of the statute or regulation for the [Council's] interpretation." *Cobra Roofing Serv., Inc. v. Dep't of Labor & Indus.*, 122 Wn. App. 402, 409, 97 P.3d 17 (2004). We do not defer to the Council's interpretation of legislative intent or the statute's meaning unless (1) the statute is ambiguous or (2) the Council is charged with its administration and enforcement. *Seattle Bldg.*, 129 Wn.2d at 799. We review a statute's plain language and statutory scheme to determine legislative intent. *State ex rel. Citizens Against Tolls v. Murphy*, 151 Wn.2d 226, 242, 88 P.3d 375 (2004). But we do not defer to an agency's interpretation of regulations that are not plausible or that are contrary to legislative intent. *Cobra Roofing*, 122 Wn. App. at 409.

II. Council's Apprenticeship Training Program Standards Approval Process

¶17 WAC 296-05-300 details the procedure for the Council's approval of a sponsor's proposed standards for an apprenticeship program. It states in pertinent part:

**Apprenticeship and training programs—Approval.**

. . . .

The principal function of the [Council] is to approve, register, and regulate apprenticeship and training agreements. Persons or organizations desiring to institute an apprenticeship or training program must follow these steps:

(1) Organize an apprenticeship and training committee according to WAC 296-05-303 and file affidavits with the [Council] requesting that the committee be recognized.

(2) Once the committee is recognized, it must propose standards conforming to these rules and to chapter 49.04 RCW. In addition, the standards must include the composition of the committee and general rules that it will follow in administering the program. (The apprenticeship supervisor and department apprenticeship coordinators are available to give assistance drafting standards.).

. . . .

(5) Once the [Council] approves the program standards the committee is authorized to function and perform its duties as described in WAC 296-05-316.

(6) If a competitor objects to the proposed standards or proposed amendment(s) to existing standards, the [Council] may either adjudicate the objection(s) with the proposed standards or refer the objection(s) with the proposed standards or proposed amendment(s) to existing standards to an administrative hearing as described in WAC 296-05-007. For purposes of this subsection "competitor" means a competing apprenticeship program in a similar or subset of the trade, craft, or occupation within the geographic area served.

WAC 296-05-300.

¶18 The Council must conduct a full adjudicatory hearing to approve proposed standards for new programs. *Seattle Bldg.*, 129 Wn.2d at 804. Under WAC 296-05-003, "standards" means "a written agreement containing specific provisions for operation and administration of the apprenticeship program and all terms and conditions for the qualifications, recruitment, selection, employment, and training of apprentices . . . ."

III. COUNCIL'S EVIDENTIARY RULINGS

¶19 The Objectors argue that the Council deprived them of their APA right to a full and fair hearing when it prevented them from presenting evidence on CITC's program standards.

¶20 We may grant judicial relief when "[t]he agency has engaged in unlawful procedure or decision-making process, or has failed to follow a prescribed procedure." RCW 34-.05.570(3)(c). WAC 296-05-300(6) states that when a competitor objects to proposed standards or amendments to standards, the Council can either conduct a full adjudicatory hearing or it can hold an administrative hearing. Here, the Council chose to conduct an administrative hearing on the objections to CITC's geographic expansion.

A. Restriction on Discovery and Testimony on Need for Apprenticeship Expansion

██ ¶21 WAC 296-05-316(2)(c) requires that the proponent of an apprenticeship program "[d]etermine need for apprentices in the area covered by the apprenticeship standards established under these rules." In *Western Washington Operating Engineer Apprenticeship Commission v. Apprentice & Training Council*, we stated that "there is no statutory or regulatory requirement that a sponsor's programs be limited to a certain geographic area. Rather, the Council allows apprenticeship program sponsors to choose the regions in which they operate their programs." 130 Wn. App. 510, 526, 123 P.3d 533 (2005). Thus, a challenge to the mere scope of the geographic area without a challenge to whether the area needs an apprenticeship program will fail. Here, the Objectors may question the need for a program expansion, but they cannot successfully object to only the proposed expansion. *See* WAC 296-05-300(6).

██ ¶22 The Objectors focused their quashed subpoena duces tecum precisely on the language of WAC 296-05-316(2)(c) relating to CITC's determination of need for the apprenticeship program in the expanded areas. And under WAC 296-05-316(2)(c), the Objectors were entitled to discovery of CITC's needs determination for those areas.[4]

---

[4] We note that *Independent Roofing Contractors of California Unilateral Apprenticeship Commission v. California Apprenticeship Council* dealt with this

¶23 Furthermore, the Council did hear evidence of need and addressed the issue in its findings:

CITC President Sandra Olson testified that the reason for state-wide expansion was to meet the requirements of training agents for state-wide coverage. This need for state-wide coverage was largely the result of the Governor of Washington's Executive Order requiring that 15% of all public work be performed by apprentices in a state-approved apprenticeship training program.

AR at 125.

¶24 And the Council allowed Olson to testify about why CITC sought to expand its program. She stated that CITC had numerous requests through its association to expand because of the desire to "bid on a lot of work" and because of the Governor's order. AR at 95. But after allowing CITC to introduce this testimony, the Council did not allow the Objectors to then question Olson about whether CITC had conducted a statistical analysis of need in the expanded area. *See* WAC 296-05-316(2)(c) (Statistical analysis of workload projections, demographics, and information relating to expected work load growth are examples of ways the sponsor may demonstrate that the need for apprentices exists.).

¶25 In short, the Council allowed CITC to present evidence that dealt directly with need. But it did not allow the Objectors to argue that geographic expansion necessarily triggers consideration of demonstrated need within the expanded area and, as such, an expansion constitutes an amendment to program standards that the Objectors should be allowed to address under WAC 296-05-316(2)(c) and WAC 296-05-300(6).

issue, and the court upheld the trial court's determination that a geographic expansion constituted a program revision and, thus, the changes were subject to the same procedural requirements as a new program. 114 Cal. App. 4th 1330, 9 Cal. Rptr. 3d 477, 481 (2003). When the trial court heard the issue, there was a pending amendment to the Council's regulations specifically establishing a geographic expansion as a program change, which the trial court relied on to support its conclusion. The appellate court affirmed. *Indep. Roofing*, 9 Cal. Rptr. 3d at 481.

¶26 Thus, the Council's order limiting the Objectors' discovery of, and cross-examination on, CITC's information demonstrating need for the expanded program was arbitrary and capricious and denied the Objectors a fair and full hearing on the proposed amendments to the existing standards.

B. Denial of Challenges to Past Nongeographic Program Changes

¶27 The Objectors also challenge changes in CITC's course content and standards made between 1999 and 2004. They claim that CITC's standards are out of compliance with current standards and that in refusing to hear their current challenges, the Council denied them their procedural rights established by the Washington Supreme Court in *Seattle Building*.[5]

¶28 The Objectors argue that *Seattle Building* compels the Council to require CITC to comply with present statutory and regulatory requirements for its programs or it cannot compete with complying programs. 129 Wn.2d at 798. And they argue that not only does CITC not comply, but the Council did not require CITC to comply with the regulatory standards.[6]

¶29 WAC 296-05-300(6) specifically grants competitors the right to object to proposed program amendments with either an administrative hearing or before an ALJ. But we find no authority that allows competitors to oppose a program amendment by demonstrating existing program deficiencies.

¶30 It is the Objectors' burden to show that the Council was required to hear their current complaints about past amendments and that the failure to do so either constituted

---

[5] The Objectors do not cite to a record of CITC's program amendments nor do they describe the changes or specify whether the Objectors made timely objections when the asserted noncomplying changes were considered by the Council.

[6] The Objectors discuss how CITC's standards do not comply with the regulatory standards required under RCW 49.04.010 and chapter 296-05 WAC. But we do not act as the fact finder and, thus, this is not the proper forum to decide this issue.

an erroneous interpretation of the law or that the decision was arbitrary or capricious. *Pollution Control Hearings Bd.*, 151 Wn.2d at 587-89; *Pub. Util. Dist. No. 1*, 146 Wn.2d at 790.

¶31 In this regard, the Objectors' reliance on *Seattle Building* is misplaced. *Seattle Building* held that competitors are entitled to a full adjudicatory hearing before the Council can approve new training programs. 129 Wn.2d at 804. It dealt with two issues: (1) did the appellants (two union councils) have standing under RCW 34.05.530 to seek judicial review of the Council's approval of CITC's apprenticeship standards for a new program and (2) did chapter 49.04 RCW require the Council to conduct a full adjudicatory hearing to determine approval of the standards for the new program? The court answered yes to both questions. *Seattle Bldg.*, 129 Wn.2d at 796, 798, 804.[7] It reasoned that the Council's approval of CITC's apprenticeship program constituted the granting of a license under RCW 34.05.010(3). *Seattle Bldg.*, 129 Wn.2d at 803. And RCW 34.05.422(1)(b) required a full adjudicative hearing when an agency granted a license. *Seattle Bldg.*, 129 Wn.2d at 799-800. Under *Seattle Building*, if CITC had sponsored a new apprenticeship program, the Council would have been required to conduct a full hearing of its proposed standards for the program. 129 Wn.2d at 804; RCW 49-.04.010; WAC 296-05-300. And the Objectors would have the right to an adjudicatory hearing under the APA to challenge the proposed standards. *Seattle Bldg.*, 129 Wn.2d at 804.

¶32 But CITC's program standards are not new. The program has existed since 1999. The record contains no evidence that the Objectors challenged CITC's earlier pro-

---

[7] Here, the Objectors argue that CITC represents a new competitor in eastern Washington and, therefore, *Seattle Building* grants them the right to a full hearing. But *Seattle Building* states only that competitors have standing and not necessarily that they have a right to a hearing on amendments to approved programs just because they are new competitors in the geographic area. Furthermore, it was admitted at oral argument before us that the standards apply statewide, thus CITC's previously approved standards affected all competitors equally, regardless of geographic location. Thus, the Objectors' argument is unpersuasive.

gram amendments that they now object to, nor is there evidence that the Council denied the Objectors the right to challenge those amendments. Whether they failed in earlier challenges or did not object is not now before us. But we know of no authority allowing them to raise those objections in the context of CITC's 2003 geographic expansion request. On this record, the Council did not err in limiting the Objectors to evidence relating to CITC's standards affected by the proposed 2003 geographic area expansion, and its decision to forbid challenges to the existing amendments to the approved 1999 standards was not arbitrary or capricious.

¶33 The Department argues that the Council correctly barred the Objectors from relitigating issues about CITC's standards that are unrelated to its expansion request. It contends that res judicata and the Council's standards of practice precluded the Objectors from introducing additional evidence.

¶34 Res judicata prevents piecemeal litigation and ensures the finality of judgments. *Spokane Research & Def. Fund v. City of Spokane*, 155 Wn.2d 89, 99, 117 P.3d 1117 (2005). It is based on the rationale that relief sought in subsequent actions " 'could have and should have been determined in a prior action.' " *Landry v. Luscher*, 95 Wn. App. 779, 783, 976 P.2d 1274 (1999) (quoting *Sanwick v. Puget Sound Title Ins. Co.*, 70 Wn.2d 438, 441, 423 P.2d 624 (1967)). "Thus, a subsequent action should be dismissed if it is identical with the first action in the following respects: (1) persons and parties; (2) cause of action; (3) subject matter; and (4) the quality of the persons for or against whom the claim is made." *Spokane Research & Def. Fund*, 155 Wn.2d at 99.

¶35 We can apply res judicata principles to agency actions when an administrative agency acts in a judicial capacity and resolves issues of fact properly before it and the parties have had an adequate opportunity to litigate. *George v. Farmers Ins. Co.*, 106 Wn. App. 430, 443, 23 P.3d 552 (2001) (quoting *United States v. Utah Constr. & Mining*

*Co.*, 384 U.S. 394, 422, 86 S. Ct. 1545, 16 L. Ed. 2d 642 (1966)); *State v. Dupard*, 93 Wn.2d 268, 274, 609 P.2d 961 (1980).

¶36 The Department argues that res judicata bars the Objectors claims because (1) the 1998 proceeding litigated CITC's standards, (2) the evidence the Objectors sought to introduce in the hearing on the 2003 proposed geographic expansion dealt directly with those standards, and (3) the rights and interests established in the 1998 proceeding would be impaired or destroyed if relitigated. In addition, the Department argues that although the Eastern Washington Northeast-Oregon Pipe Trades Apprenticeship Committee did not participate in the 1998 process, its interests are identical to the western Washington union competitors.

¶37 The Objectors counter that res judicata does not apply because the Department did not produce the record of the 1998 hearing; therefore, it cannot prove the required res judicata elements.

¶38 The Department bears the burden of proof on this issue. *Hisle v. Todd Pac. Shipyards Corp.*, 151 Wn.2d 853, 865, 93 P.3d 108 (2004). As our Supreme Court stated in *Hisle:* "Res judicata is the rule, not the exception." 151 Wn.2d at 865. It quoted the general doctrine recited in *Schoeman v. New York Life Insurance Co.*:

> "[T]he plea of *res judicata* applies, except in special cases, not only to points upon which the court was actually required by the parties to form an opinion and pronounce a judgment, but to every point which properly belonged to the subject of litigation, and which the parties, exercising reasonable diligence, might have brought forward at the time."

106 Wn.2d 855, 859, 726 P.2d 1 (1986) (quoting *Sayward v. Thayer*, 9 Wash. 22, 24, 36 P. 966, 38 P. 137 (1894)).

¶39 We agree with the Department that (1) CITC's plumbing apprenticeship standards have been the subject of the Council's initial and subsequent actions, (2) CITC and the Objectors have been the proper parties, and (3) the identity of interest among the Objectors is sufficient to bar

subsequent challenges to the accepted standards by the Objectors now challenging further amendment requests. The Council provided adequate opportunity to address concerns about CITC's initial 1999 standards and the amendments because any competitor may pose a challenge and request an administrative hearing or a hearing before the Council when amendments to the standards are requested. WAC 296-05-300(6). Failure to come forward with concerns in a timely manner bars later attack on approved standards if the procedure followed provided proper procedural due process. Here, the record does not indicate that the Council violated these procedures and the Objectors' claim fails.

IV. CONSISTENCY

¶40 The Objectors also contend that the Council treated CITC's expansion request in a manner inconsistent with two other expansion requests it heard. They cite to an expansion request by IPC/ABC in 2000[8] and CITC's 2004 electrical program expansion request.[9]

¶41 Agencies may not treat similar situations in different ways. *Vergeyle v. Employment Sec. Dep't*, 28 Wn. App. 399, 404, 623 P.2d 736 (1981), *overruled on other grounds by Davis v. Employment Sec. Dep't*, 108 Wn.2d 272, 276, 737 P.2d 1262 (1987). Further, RCW 34.05.570(3)(h) requires the Council to rule with consistency unless a rational basis for an inconsistency is demonstrated by an explanation of the facts and its reasoning.

¶42 The Objectors cite to *Lemoyne-Owen College v. National Labor Relations Board*, a District of Columbia Circuit case that required an agency to provide an explanation

---

[8] The Council heard IPC/ABC's expansion request in October 2000 and issued its order in April 2001.

[9] CITC's electrical expansion request was not on record before the Council. The Objectors raised it in their brief before the superior court.

of a holding contrary to its precedent. 360 U.S. App. D.C. 40, 357 F.3d 55, 60 (2004).[10]

## A. IPC/ABC

¶43 Here, the Objectors were allowed to present the record of the ALJ's findings, which the Council adopted in response to IPC/ABC's 2000 expansion request. In that hearing, the ALJ considered IPC/ABC's program standards and recommended that the Council deny the expansion request. The Objectors argue that because the Council allowed evidence relating to IPC/ABC's standards, it must do so here. The Department counters that IPC/ABC's request included more than a geographic expansion and that CITC's current request deals with only an expansion. Thus, it contends that the cases are different and the Council did not err in treating them differently.

¶44 We have the record of the Council's findings of facts, conclusions of law, and order in the IPC/ABC hearing, but we do not have a record of IPC/ABC's request for modification of its standards; thus we do not know exactly what issues the Council considered in the case.

¶45 But the findings from the IPC/ABC hearing show, contrary to the Objectors' position, that IPC/ABC requested more than just a geographic expansion. Specifically, in its statement of the case, the ALJ stated: "IPC/ABC submitted . . . a Request for Revision of Standards. Those proposed revisions included, *among other things*, expanding IPC/ABC's geographical area. . . . " AR at 206 (emphasis added). And in its findings of fact, the ALJ stated: "[T]he revision changed the ratio of apprentices to journeymen." AR at 207. The findings then discuss ratio.

---

[10] *Lemoyne-Owen College v. National Labor Relations Board* provides a detailed analysis of its ruling requiring the agency to provide an explanation of its departure from precedent. 357 F.3d at 60. The Objectors rely heavily on this discussion. But the case is not controlling for two reasons. First, it is from the District of Columbia Circuit, and it dealt with an agency that had clear precedent in the United States Supreme Court and an extensive body of prior cases that it departed significantly from. *Lemoyne-Owen*, 357 F.3d at 56-58. Second, here, the agency formally heard only two other expansion requests that were not identical to CITC's plumber apprenticeship program geographic expansion request.

¶46 This record supports the Department's position that IPC/ABC's request included more than just an expansion request and is, therefore, distinguishable from CITC's expansion request. Further, the burden of proof rests with the Objectors, and without the full record of the IPC/ABC hearing, the Objectors fail to meet their burden. Therefore, we conclude that the Council did not improperly treat the IPC/ABC request differently.

## B. CITC's Electrical Program Expansion

¶47 The Objectors next argue that in CITC's expansion request for its electrician program, which CITC submitted after the Council allowed the plumber program expansion, the Council required CITC to provide a demonstration of need for the expansion. The Objectors argue that here, unlike in the electrical program expansion, the Council did not require CITC to demonstrate the need for its plumbing program in the expanded area. In fact, here, the Council specifically ruled that need was not at issue in the hearing. Thus, the Objectors argue that the Council erroneously treated similar situations differently.

¶48 We note that the Council did consider evidence from CITC on the issue of need for the geographic expansion and we concluded that the Council erred in precluding the Objector's discovery and presentation of evidence related to need for the geographic expansion. Thus, the Objectors have already prevailed on their procedural error claim relating to evidence of need in the expanded geographic area.

### V. ATTORNEY FEES

¶49 The Objectors argue that they are entitled to attorney fees under RCW 4.84.350(1), which states:

> Except as otherwise specifically provided by statute, a court shall award a qualified party that prevails in a judicial review of an agency action fees and other expenses, including reasonable attorneys' fees, unless the court finds that the agency action was substantially justified or that circumstances make an award unjust. A qualified party shall be considered to have

prevailed if the qualified party obtained relief on a significant issue that achieves some benefit that the qualified party sought.

¶50  On appeal, the Objectors prevail on and benefit from the right to do discovery, to present evidence, and to question CITC's evidence relating to a need for the apprenticeship program in the expanded geographic area. These are significant issues and benefit the Objectors as required under RCW 4.84.350(1). Because the Council heard testimony from CITC on this issue, we do not find that its refusal to allow discovery and evidence from the Objectors was substantially justified. Furthermore, the circumstances do not make an award of fees and costs to the Objectors unjust. Thus, we award the Objectors reasonable attorney fees and costs based on the statute.

¶51  The Council did not err in limiting the scope of the hearing to issues of the expansion, but it did erroneously interpret the law and acted arbitrarily and capriciously when it (1) denied the Objectors' request for discovery relating to need for the geographic expansion and (2) refused to allow the Objectors to cross-examine or present evidence in response to CITC's evidence on the issue of need. We vacate the Council's May 14, 2004 approval of the geographic expansion proposed by CITC and remand for further proceedings before the Council.

QUINN-BRINTNALL, C.J., and BRIDGEWATER, J., concur.

Reconsideration denied April 5, 2006.