510

WESTERN WASHINGTON OPERATING ENGINEERS APPRENTICESHIP COMMITTEE ET AL., *Appellants*, v. THE WASHINGTON STATE APPRENTICESHIP AND TRAINING COUNCIL, *Respondent*.

512

*Richard H. Robblee* (of *Rinehart & Robblee*), for appellants.

*Robert M. McKenna, Attorney General,* and *Suchi Sharma* and *Leslie V. Johnson, Assistants*; and *Judd H. Lees,* for respondent.

¶1 VAN DEREN, J. — Three apprenticeship committees and sponsors of apprenticeship committees, collectively referred to here as the Joint Apprenticeship Training Committees (JATCs), appeal the Washington State Apprenticeship and Training Council's (Council)[1] approval of the Construction Industry Training Council of Washington's (CITC)[2] proposed apprenticeship program for operating engineers. The JATCs argue that (1) the Council and the superior court erred in determining that their challenge to the composition of CITC's apprenticeship committee (Committee) was untimely and, thus, precluded under the Washington Administrative Procedure Act (APA), chapter 34.05 RCW, and chapter 296-05 WAC; and (2) portions of CITC's proposed standards are not reasonably consistent with existing apprenticeship programs of the same trade.

¶2 We hold that (1) the JATCs timely challenged CITC's Committee composition in the proposed standards, (2) there was an insufficient factual basis for the Council to determine that CITC's proposed apprenticeship standards for hands-on training and supplemental instruction were reasonably consistent with existing apprenticeship programs in the same trade, and (3) CITC's proposed standards improperly suggest the elimination of an apprentice's discipline appeal rights. We therefore reverse and remand for further proceedings consistent with this opinion.

FACTS

¶3 The legislature established the Council as a state agency to enact rules and oversee the standards of vocational apprenticeship programs. RCW 49.04.010; chapter

---

[1] The Council is the nominal party in interest and the named respondent in this appeal. The real party in interest is the Department of Labor and Industries (Department). Without a formal motion to substitute parties or amend the caption, but without objection by the JATCs or CITC, the Department has assumed the role of Respondent herein. The Department filed a "Brief of Respondent Department of Labor and Industries." Thus, we refer to the Department's legal arguments.

[2] CITC is an "adverse party on review" and, therefore, we consider it a respondent in this appeal. RAP 3.4.

296-05 WAC. Six members are appointed by the director of the Department of Labor and Industries (Department) and one is appointed by the Governor. RCW 49.04.010. The apprenticeship programs train participants for a skilled trade such as carpentry, electrical work, or plumbing, and involve both practical, hands-on experience and classroom instruction. RCW 49.04.040; WAC 296-05-300; *see also* WAC 296-05-305 (explaining apprenticeship occupations).

¶4 The Council's primary responsibility is to approve and register proposed apprenticeship programs. RCW 49-.04.010; WAC 296-05-300. The Department assists sponsoring organizations in their development of proposed apprenticeship programs to ensure that the new programs comply with chapter 49.04 RCW and chapter 296-05 WAC. RCW 49.04.010; RCW 29.04.030; WAC 296-05-107. The APA applies to all adjudications of the Council's decisions. WAC 296-05-007.

A. Council's Approval of CITC's Committee

¶5 CITC is a private organization that sponsors nonunion apprenticeship programs in various skilled trades. In 2000, CITC sought Council approval for an apprenticeship program for heavy equipment operators (or operating engineers).

¶6 In July 2000, during the Council's regularly scheduled public meeting, it approved CITC's proposed Committee. The Committee's task was to develop proposed standards in compliance with chapter 296-05 WAC and chapter 49.04 RCW[3] for an apprenticeship program for operating engineers. No objection was raised to CITC's proposed Committee at the meeting.

¶7 Three months later, at the Council's next regularly scheduled public meeting in October 2000, CITC sought Council approval for its proposed standards for an appren-

---

[3] The Council's meeting minutes state: "There was a discussion regarding how the employee representatives were selected. It was determined that selection was based on volunteer participation from appropriate contractors with journey level experience." 1 Administrative R. (AR) at 158.

tice program for operating engineers. The proposed standards included its Committee membership and substantive details of its apprenticeship program. The Department had assisted the Committee in developing the standards and it recommended that the Council approve them.

¶8 The JATCs, who represent three unionized trade groups, timely objected to the CITC Committee's proposed standards, asserting that CITC's proposed apprenticeship program for operating engineers competed with the JATCs' existing apprenticeship programs for the same trade.[4] The JATCs asserted that CITC's standards were not substantially similar to their program and would create an economic disadvantage. *See, e.g.*, 1 Administrative R. (AR) at 23 ("The [CITC] Standards do not appear to be substantially similar to the Western Washington Operating Engineers Standards. Also, in our opinion the [CITC] Standards may create an economic disadvantage to our program."). The JATCs' petition did not specifically challenge the composition of CITC's Committee.

B. Administrative Proceedings

¶9 The Council referred the JATCs' objections for agency adjudication. An administrative law judge (ALJ) thereafter requested that the JATCs clarify their challenges. In February 2002, the JATCs filed amended petitions that specifically objected to CITC's proposed apprenticeship standards regarding the proposal's amount of "hands-on" practical training during classroom instruction, the costs apprentices were required to pay, the proposal's geographic scope, and language regarding an apprentice's appeal rights for disciplinary matters. Two amended petitions also objected to the composition of CITC's Committee.

¶10 CITC moved for summary judgment, arguing in part that because the Council's approval of CITC's Committee in July 2000 was an agency action, the JATCs' delay in challenging CITC's proposed standards until October 2000

---

[4] One union-affiliated group with an existing and registered apprenticeship program for operating engineers did not object to CITC's proposed standards.

waived their right to obtain an adjudicative hearing on this specific issue.

¶11 In opposing summary judgment, the JATCs asserted that "[C]ommittee composition must be included in the [proposed] standards. Because of its incorporation into the standards, *all such matters under the standards are subject to review through the Objection process.* . . . By the plain terms of the regulation [chapter 296-05 WAC], the Council has only contemplated objections as to standards." 1 AR at 168, 170 (emphasis added). The JATCs emphasized that, "[r]eview of the Committee composition is critical because the Objectors believe that CITC's Committee composition fails to comport with the statute and attendant regulations." 1 AR at 169.

¶12 After brief oral argument and without a written or detailed explanation, the ALJ granted CITC partial summary judgment precluding the JATCs from asserting their Committee composition challenge. The ALJ then conducted four days of hearings to address the JATCs' challenges to CITC's remaining proposed standards.

¶13 As the hearing in this matter progressed, CITC modified its proposed standards to address some of the concerns expressed by the JATCs. The modifications were discussed during the hearing, and a written copy of CITC's amended standards was provided to the JATCs approximately one week before the last hearing day on June 7, 2002.

¶14 The ALJ issued a proposed order recommending approval of CITC's proposed apprentice training program, which the Council fully adopted in November 2002.[5] The JATCs moved for reconsideration. After an additional hearing, which included argument on the JATCs' challenge to CITC's Committee composition, the Council affirmed its prior decision approving CITC's proposed apprenticeship standards.

---

[5] The ALJ's proposed order required limited amendments to CITC's proposed apprenticeship standards that are not relevant to this appeal.

## C. Superior Court Review

¶15 The JATCs petitioned for judicial review.[6] Relying heavily on *Seattle Building & Construction Trades Council v. Apprenticeship & Training Council* and WAC 296-05--300's plain language, the JATCs asserted that the Council's refusal to consider their challenge of CITC's Committee composition was erroneous. 129 Wn.2d 787, 804, 920 P.2d 581 (1996). The JATCs also challenged the proposed standards involving (1) the amount of hands-on training, (2) costs, (3) geographic scope, and (4) language relating to an apprentice's appeal rights in disciplinary actions.

¶16 The trial court did not review additional evidence. It affirmed the decisions of the ALJ and the Council. Regarding CITC's Committee composition, the court held that, "approval of apprenticeship standards involves two steps, the first of which is composing a committee to draft the standards and the second of which is the committee's drafting of standards, each is a separate and appealable 'agency action' under the APA." Clerk's Papers at 132. Thus, the trial court held that the JATCs waived their right to contest CITC's Committee composition under the APA and WAC 296-05-007 because this objection failed to occur soon after the Council approved the Committee in July 2000. The court further found that the record contained substantial evidence that CITC's proposal was reasonably consistent with existing programs. The JATCs timely appeal.

## ANALYSIS

¶17 We review a final agency order under RCW 34-.05.570(3). The party challenging an agency's action must prove the decision's invalidity, and our review is limited to the record before the agency. RCW 34.05.570(1)(a), .558; *Port of Seattle v. Pollution Control Hearings Bd.*, 151 Wn.2d 568, 587, 90 P.3d 659 (2004). We may grant relief to the petitioner if an agency erroneously interpreted

---

[6] The JATCs' petition for review asserted numerous errors that are not raised on appeal, thus we do not review these issues.

the law or if an agency's decision is arbitrary or capricious. RCW 34.05.570(3)(c), (i); *Pub. Util. Dist. No. 1 of Pend Oreille County v. Dep't of Ecology*, 146 Wn.2d 778, 790, 51 P.3d 744 (2002). When the trial court's review of an agency decision does not entail additional evidence, we do not defer to the trial court's decision. *Seattle Bldg.*, 129 Wn.2d at 799.

¶18 We review the regulations and statutes here de novo and our interpretation must not create an absurd result. *Flanigan v. Dep't of Labor & Indus.*, 123 Wn.2d 418, 426, 869 P.2d 14 (1994); *Cobra Roofing Serv., Inc. v. Dep't of Labor & Indus.*, 122 Wn. App. 402, 409, 97 P.3d 17 (2004), *review granted*, 154 Wn.2d 1001 (2005).

¶19 We review the Council's interpretation of chapter 296-05 WAC under an error of law standard, "which allows an appellate court to substitute its own interpretation of the statute or regulation for the [Council's] interpretation." *Cobra Roofing*, 122 Wn. App. at 409. Thus, we do not defer to an agency's interpretation of its regulations that are not plausible or that are contrary to legislative intent. *Cobra Roofing*, 122 Wn. App. at 409. We review a statute's plain language and statutory scheme to determine legislative intent. *State ex rel. Citizens Against Tolls v. Murphy*, 151 Wn.2d 226, 242, 88 P.3d 375 (2004).

¶20 Because the proposed standards did not become effective until the Council adopted them on November 18, 2002, we review them for compliance with the law at the time of adoption. *See, generally*, RCW 49.04.040, .050.

I. TIMELINESS OF CHALLENGE TO CITC'S COMMITTEE COMPOSITION

¶21 The parties agree that a sponsor's new apprenticeship program requires Council approval of the sponsor's Committee and the Committee's proposed standards for the program.[7] RCW 49.04.010; WAC 296-05-300. The parties

---

[7] Chapter 49.04 RCW was significantly revised and former chapter 296-04 WAC was repealed in January 2002. Chapter 296-05 WAC became effective in January 2002. Because CITC's proposed standards, which include Committee composition,

also agree that the objecting party has a right to an adjudicatory hearing under the APA to challenge the sponsor's proposed standards.

■ ¶22 But the Department and CITC argue that the Council's approval procedure involves two separate agency actions that require a timely objection. According to the Department and CITC, the first agency action requiring a formal objection is the Council's approval of CITC's Committee composition. The second agency action is the Council's approval of CITC's proposed standards for the apprenticeship programs. Thus, the Department and CITC contend that because the Council approved the CITC committee in July 2000, the JATCs had to object within 20 days for ALJ review or 30 days for judicial review. RCW 34-.05.413, .542.

¶23 The JATCs respond that WAC 296-05-300 requires one objection when the Council approves a sponsor's proposed standards for the apprenticeship program. They argue that WAC 296-05-300's plain language and regulatory scheme incorporates committee composition with the sponsor's substantive aspects of the proposed standards. The JATCs contend that their interpretation of chapter 296-05 WAC accords with *Seattle Building*'s holding that a competitor's right to an adjudicatory hearing under the APA rests on the Council's issuance of a license and that the sponsor's program is licensed and authorized to function only *after* the Council approves the sponsor's proposed standards. *See* Reply Br. of Appellant at 5-6 ("The 'license' in the apprenticeship world is [the Council's] registration of a program. . . . upon submission of proposed standards."). Thus, the JATCs maintain that they preserved their challenge to the CITC Committee composition when they formally objected in October 2000 to CITC's proposed standards.

were not finally approved until November 2002, we review them for compliance with the law in effect at that time. Additionally, the differences between former chapter 296-04 WAC and existing rules are not dispositive to our analysis of the challenge to Committee composition.

¶24 RCW 49.04.040 provides that a Committee "shall be composed of an equal number of employer and employee representatives" and outlines the procedures for membership selection. WAC 296-05-313 is consistent with RCW 49-.04.040. RCW 49.04.050 provides: "To be eligible for registration, apprenticeship program standards must conform to the rules adopted by the [C]ouncil."

¶25 WAC 296-05-300 details the procedure for Council approval of a sponsor's proposed standards for an apprenticeship program. This regulation provides in relevant part:

**WAC 296-05-300 Apprenticeship and training programs—Approval.** . . . The principal function of the [Council] is to approve, register, and regulate apprenticeship and training agreements. Persons or organizations desiring to institute an apprenticeship or training program must follow these steps:

(1) Organize an apprenticeship and training committee according to WAC 296-05-303 and file affidavits with the [Council] requesting that the committee be *recognized.*

(2) *Once the committee is recognized,* it must propose standards conforming to these rules and to chapter 49.04 RCW. In addition, *the standards must include the composition of the committee and general rules that it will follow in administering the program.* (The apprenticeship supervisor and department apprenticeship coordinators are available to give assistance drafting standards.)

. . . .

(5) *Once the [Council] approves the program standards the committee is authorized to function and perform its duties as described in WAC 296-05-316.*

(6) *If a competitor objects to the proposed* standards or proposed amendment(s) to existing standards, the [Council] may either adjudicate the objection(s) with the proposed standards or *refer the objection(s) with the proposed standards or proposed amendment(s) to existing standards to an administrative hearing as described in WAC 296-05-007.* For purposes of this subsection "competitor" means a competing apprenticeship

program in a similar or subset of the trade, craft, or occupation within the geographic area served.

(Emphasis added.)

¶26 In *Seattle Building*, our Supreme Court held that if a competitor objects to the Council's approval of a sponsor's proposed apprenticeship standards, the Council must provide a formal adjudicatory hearing under the APA. 129 Wn.2d at 804. The right to an adjudicatory hearing is based on the fact that the Council's approval of a sponsor's standards constitutes a license under the APA. *See Seattle Bldg.* 129 Wn.2d at 798, 804 ("the duty the agency allegedly failed to perform was to hold an adjudicatory hearing required by RCW 34.05.422(1)(b). . . .[8] We . . . hold that the APA requires a formal adjudicatory hearing on an application for . . . Council approval and registration of an apprenticeship program under RCW 49.04.").

¶27 *Seattle Building* did not articulate when a competitor must request an adjudicatory hearing, but the JATCs' interpretation of WAC 296-05-300's plain language and regulatory scheme is persuasive. WAC 296-05-300(2) includes Committee composition as part of the Council's review of a sponsor's proposed standards and WAC 296-05--300(6) fails to reference Committee composition when articulating a competitor's objection rights. WAC 296-05--300(5) clearly states that the sponsor's potential apprenticeship program is "authorized to function" only when the Council approves the sponsor's proposed program standards. And unlike the Council's "recognition" of a sponsor's committee to develop proposed standards, WAC 296-05-300(4) expressly requires the Council to formally approve or disapprove a sponsor's proposed standards in

---

[8] RCW 34.05.422 provides, in relevant part, "(1) Unless otherwise provided by law: . . . (b) applications for licenses that are contested by a person having standing to contest under the law and review of denials of applications for licenses or rate changes shall be conducted as adjudicative proceedings." And the APA defines a license, in relevant part, as, " '[l]icense' means a franchise, permit, certification, approval, registration, charter, or similar form of authorization required by law." RCW 34.05.010(9)(a).

order to register the sponsor's new program under WAC 296-05-300(5).[9]

¶28 Further, even before the Council formally revised its regulations in January 2002, the agency interpreted former chapter 296-04 WAC after *Seattle Building* to provide *one* adjudicatory hearing. See *Constr. Indus. Training Council v. Wash. State Apprenticeship & Training Council*, 96 Wn. App. 59, 62, 977 P.2d 655 (1999); *Constr. Indus. Training Council v. Wash. State Apprenticeship & Training Council*, 91 Wn. App. 470, 473, 957 P.2d 1267 (1998).

¶29 Thus, we agree with the JATCs' interpretation of the relevant rules and *Seattle Building*. Their right to object to a sponsor's Committee composition arises when the Council reviews a sponsor's proposed standards. The Department's and CITC's attempt to implement a bifurcated objection process that requires a formal adjudicatory hearing before the Council considers the proposed standards is contrary to WAC 296-05-300's plain language and *Seattle Building*'s holding.[10] The allowable challenge is to the Committee identified in the proposed standards.

¶30 The Department and CITC also complain that the JATCs' formal objection in October 2000 did not mention Committee composition. Here, two of the three JATCs articulated a specific challenge to the Committee upon the ALJ's request for clarification in February 2002.

---

[9] We emphasize that former WAC 296-04-005 contains language similar to WAC 296-05-300.

[10] For example, the Department argues that interpreting WAC 296-05-300 to require a party to delay its Committee composition challenge until the Council approves the proposed standards is unwise. Br. of Resp't at 19 ("Under their [JATCs'] view, *only after a potentially skewed [C]ommittee proposed its standards* would the [JATCs] have had the right to object to the [C]ommittee's composition. Further, it would mean that *a potentially skewed [C]ommittee would go through the entire standards-creation process, consulting and conferring with the Department*, only to have its very composition rejected." (emphasis added)). But this argument ignores *Seattle Building*'s holding and chapter 296-05 WAC's regulatory scheme. This argument also exaggerates the amount of time the Committee spends to develop proposed standards. Here, *only three months passed* (July-October) between the Council's approval of CITC's Committee and the CITC's proposed apprenticeship standards.

¶31 Thus, we reverse the ALJ's summary dismissal of the Committee composition challenge and the Council's conclusion that the JATCs waived their right to challenge Committee composition because they waited until the October 2000 Council action to state objections to the proposed standards. Accordingly, we remand for an adjudicatory hearing under the APA regarding CITC's Committee composition as set forth in the proposed standards.[11]

II. CITC's PROPOSED APPRENTICESHIP STANDARDS

¶32 The JATCs also argue that the CITC's proposed apprenticeship training standards were not reasonably consistent with existing apprenticeship programs for the same trade.

¶33 The Council may approve a sponsor's proposed apprenticeship standards if they comply with WAC 296-05-316(26), which states in relevant part that "[Proposed standards must include] [p]rovisions to ensure any proposed standards for apprenticeship are reasonably consistent with any standards for apprenticeship already approved by the [Council] for the industry, craft or trade in question."

¶34 We review the agency's factual findings under the substantial evidence standard in light of the entire record; "[s]ubstantial evidence is 'evidence in sufficient quantum to persuade a fair minded person of the truth of the declared premises.' " *Valentine v. Dep't of Licensing*, 77 Wn. App. 838, 844, 894 P.2d 1352 (1995) (quoting *Thieu Lenh Nghiem v. State*, 73 Wn. App. 405, 412, 869 P.2d 1086 (1994)). An agency order is arbitrary or capricious "if it is willful, unreasoning, and issued without regard to or consideration of the surrounding facts and circumstances." *Manke Lumber Co. v. Cent. Puget Sound Growth Mgmt. Hearings Bd.*, 113 Wn. App. 615, 623, 53 P.3d 1011 (2002).

---

[11] Given our holding, we do not need to reach the parties' additional APA arguments.

A. "Hands-on" Training During Classroom Instruction

¶35 The JATCs argue that the evidence does not support the ALJ's decision and that the Council erred in finding that CITC's proposed apprenticeship standards provided a reasonably consistent amount of hands-on training during supplemental classroom instruction.

¶36 The Council's regulations require that CITC's proposed apprenticeship standards include a minimum of 2000 hours of hands-on or practical training and 144 hours of supplemental classroom instruction. WAC 296-05-316(1), (6), (16). But the Council's regulations do *not* require a particular percentage or number of hours for hands-on training during classroom instruction.

¶37 WAC 296-05-316(26) requires that the standards be "reasonably consistent" with those standards of existing programs and that the "course content and delivery method must be designed to achieve the same levels of skills as existing standards within the state for that industry, trade, or craft." The regulations do not define "reasonably consistent." And at oral argument on appeal the Department conceded that there is no test administered to apprentices to measure comparability of skills between and among different existing programs.

¶38 Here, CITC's proposed standards provide 7,000 hours of hands-on training and 160 hours of related supplemental instruction. CITC's staff testified that its apprenticeship program would provide at most 50 percent of its classroom instruction as hands-on training. The ALJ concluded that the CITC program would provide for "60-80% 'hands-on' training accompanied by 20-40% classroom study," and that this was comparable to the JATCs' apprenticeship program standards; thus deeming it reasonably consistent with existing standards and designed to achieve the same levels of skills. 1 AR at 633. But the ALJ based this conclusion primarily on a non-CITC curriculum that inspired CITC's apprenticeship program, not on CITC staff testimony about its specific program's requirements. The Council adopted the ALJ's conclusions without comment.

■ ¶39 The JATCs point to evidence rebutting the Council's decision that CITC's program is reasonably consistent with existing apprenticeship programs for hands-on training during the classroom component. CITC's program has at most 80 hours of hands-on training during classroom instruction (50 percent of the 160 hours of related supplemental instruction). Other existing programs have approximately 100 to 120 hours of hands-on training during classroom instruction. Thus, existing programs have 25 to 50 percent more hours of hands-on training during classroom instruction than CITC's program. Neither the ALJ nor the Council discussed how the reduction of hands-on hours during classroom instruction was comparable to the hours required in other programs or any unique characteristics of CITC's program that would produce the same level of skill in operating heavy machinery with the reduced hands-on training hours. Because substantial evidence does not support the Council's conclusion that CITC's apprenticeship standards are reasonably consistent with existing programs, its decision was arbitrary or capricious.

B. Costs to Apprentices and Geographic Scope

¶40 The JATCs argue that CITC's proposed apprenticeship standards are not reasonably consistent with existing programs because they charge apprentices for training and cover too large a geographic area. The JATCs' arguments are unpersuasive on these issues.

■ ¶41 The Council adopted the ALJ's determination that neither chapter 49.04 RCW nor chapter 296-05 WAC requires a sponsor's proposed standards to detail apprentices' costs. An agency can act only on powers the legislature granted to it. *Campbell v. Dep't of Soc. & Health Servs.*, 150 Wn.2d 881, 894, 83 P.3d 999 (2004). Department staff testified that the costs an apprentice incurs "[are] really outside of the [Apprenticeship] council's jurisdiction." 3 AR at 80. Department staff testified further that,

[The Council is] charged with approving the on-the-job training and the RSI [classroom instruction] and the occupations that those training providers say that they're going to be training in.

*It is not the [C]ouncil's intent to interfere in anyone's financial dealings.* Certainly some programs spend lots of money on training and some don't spend as much as others.

3 AR at 80 (emphasis added).

¶42 Like the cost issue, there is no statutory or regulatory requirement that a sponsor's programs be limited to a certain geographic area. Rather, the Council allows apprenticeship program sponsors to choose the regions in which they operate their programs. Thus, the Council did not err in rejecting the JATCs' challenge to CITC's proposed standards based on costs and geographic scope.

## C. Apprentice Appeal Rights in Disciplinary Matters

¶43 The JATCs argue that because CITC's standards state that CITC's Committee's decisions regarding apprentice discipline are final, the standards do not provide an apprentice notice of the statutory right to appeal disciplinary issues to the Council.

¶44 WAC 296-05-009 guarantees apprentices past their probationary period the right to appeal discipline first to the Department and then, if necessary, to the Council. The standards for apprenticeship programs must include a description of the apprentice's right to appeal to the Council. WAC 296-05-316.

¶45 CITC's standards and catalog state that decisions of the Committee are final, and that the "CITC Board has final authority on all issues." 1 AR 465. CITC staff testified that the "finality" language in the proposed standards reflects the Committee's disciplinary decision only and that the CITC program would provide apprentices a written notice of their right to appeal CITC disciplinary decisions. The ALJ commented that the "boilerplate" language the Department developed details an apprentice's appeal rights regarding disciplinary matters. 1 AR at 634.

¶46 But the boilerplate language is ambiguous about whether the Committee or the Board makes disciplinary decisions and it does not notify the apprentice of the right to appeal to the Department, which is the initial step of the appeal. And WAC 296-05-316 requires that the standards include, presumably in writing, that there is a right to appeal to the Department and to the Council. This is in each apprentice's best interest. A representation at the adjudicatory hearing that CITC would later provide notice of this appeal right does not satisfy WAC 296-05-316 and must be set aside. Thus, the Council erred in rejecting the JATCs' challenge to CITC's disciplinary rights statement in the standards.

¶47 We reverse and remand for a formal adjudicatory hearing on the Committee composition designated in the standards. We also vacate the ALJ's and the Council's findings that CITC's apprenticeship standards were (1) reasonably consistent with other related programs for hands-on training and (2) adequately articulated an apprentice's disciplinary appeal rights. These issues must be addressed on remand.

QUINN-BRINTNALL, C.J., and BRIDGEWATER, J., concur.