190 P.3d 506 (2008)
144 Wash.App. 145
WESTERN WASHINGTON OPERATING ENGINEERS APPRENTICESHIP COMMITTEE, Western States Operating Engineers Institute of Training Apprenticeship Committee, and Oregon/Southwest Washington IUOE 701 & AGC Heavy Equipment Operators JATC, Appellants,
v.
WASHINGTON STATE APPRENTICESHIP AND TRAINING COUNCIL, Respondent, and
Construction Industry Training Council of Washington and Department of Labor and Industries of the State of Washington, Interested Parties.
No. 36103-5-II.
Court of Appeals of Washington, Division 2.
April 22, 2008.
As Amended on Denial of Reconsideration July 8, 2008.
*507 Richard Howard Robblee, Robblee Brennan & Detwiler, Seattle, WA, for Appellants.
Leslie Van Horne Johnson, Office of the Attorney General, Olympia, WA, Judd Hudson Lees, Attorney at Law, Seattle, WA, for Respondent.
Judith C.W. Morton, Attorney General's Office, Olympia, WA, for Interested Parties.
ARMSTRONG, J.
¶ 1 The Joint Apprenticeship Training Committees (JATCs) seek judicial review of the Washington State Apprenticeship and Training Council's (Council) second approval of the Construction Industry Training Council of Washington's (CITC) proposed apprenticeship program after the Council conducted an adjudicative hearing required by this court in Western Wash. Operating Engineers Apprenticeship Comm. v. Wash. State Apprenticeship & Training Council (Operating Eng'rs I), 130 Wash.App. 510, 123 P.3d 533 (2005). The JATCs argue that (1) the substantial evidence does not support the Council's approval of CITC's committee selection procedure under RCW 49.04.040 and was based on unsworn testimony and improper "official notice" of its prior decision in violation of RCW 34.05.452(5), (2) the Council's finding that the proposed committee members were "knowledgeable" under WAC 296-05-313(4) was erroneous, and (3) substantial evidence did not support the Council's finding that CITC's program standards were "reasonably consistent" with those of existing programs. Because the Council considered unsworn testimony in making its decision, we reverse and remand for further proceedings.

*508 FACTS
¶ 2 CITC is a private organization that sponsors non-union apprenticeship programs in various skilled trades. The JATCs consist of several union-affiliated organizations that run competing apprenticeship programs.
¶ 3 In 2000, CITC sought Council approval for an apprenticeship program for heavy equipment operators (operating engineers).[1] The Council approved the program over the JATCs' objections to both CITC program standards and its proposed apprenticeship committee. After the JATCs sought judicial review, we remanded to the Council for an adjudicative hearing to address (1) the JATCs' challenges to the committee's composition, (2) whether CITC standards were reasonably consistent with other related programs for hands-on training, and (3) whether the standards adequately articulated apprentices' disciplinary appeal rights.[2]Operating Eng'rs I, 130 Wash.App. at 527, 123 P.3d 533.

I. Adjudicative Hearing
¶ 4 The Council held an adjudicative hearing to take evidence regarding CITC's program and thereby address the issues raised in our decision.[3] Both CITC and the JATCs were represented by counsel at the hearing. CITC called its Vice President of Apprenticeship, Halene Sigmund, as its first witness.

A. Program Standards Re: Hands-On Training

¶ 5 Sigmund testified first that CITC had amended its proposed committee and standards since the Council's initial approval. One amendment was to require that "[r]elated/supplemental instruction shall consist of between 60 and 80 percent practical training (skill training or seat-time)." Administrative Record (AR) at 48-49.
¶ 6 CITC also called its Vice President for Education, David Perrin, who was responsible for hiring, training, and evaluating apprenticeship instructors, program development, and program implementation. Perrin oversaw the actual implementation of the related supplemental instruction (RSI)[4] requirements of CITC's operator standards, and he testified that he approved the proposed amendment requiring 60 to 80 percent practical training because it was consistent with what the instructors were already doing. The amendment to the standards would merely require CITC to continue the practice.

B. Employee Selection Process

¶ 7 Sigmund testified that she was involved in selecting apprenticeship committee members in that she "go[es] out for and ask[s] from the current training agents[[5]] or employers involved with CITC that currently have apprentices in the program, and [she] request[s] volunteers." AR at 49. Specifically, she requests volunteers with a form, stating:
To: All Operator Journey Level Employees
From: Halene Sigmund, Vice President  Apprenticeship, CITC
Re: Operator Apprenticeship Committee Request

CITC is requesting volunteers interested in sitting on the heavy equipment operators committee as employee representatives. This committee is required to have 50 percent employee and 50 percent management *509 representation. In order to fulfill this requirement we are reaching out to any journey level employees who feel they will be able to contribute their time as members of the apprenticeship committee. The employee representatives must be known to represent the interests of the operator trade.
AR at 160. The form includes a "Job Description" for the committee position and a place for interested employees to mark, "I have ___ years as an operator." AR at 160. Sigmund testified that the form "is a document I send out to individuals who are interested in participating on the Apprenticeship Committee." AR at 53. She solicited interested employees by telephoning the employers participating in a CITC program. She did not know how the employers got word to the employee representatives who ultimately volunteered.
¶ 8 The three proposed employee representatives for the committee were Lonnie Dotson, Bruce Solt, and Al Myers. Mike Rutgers was proposed as an alternate. All four worked for training agents.[6]
¶ 9 After Dotson faxed an interest form to Sigmund, she called him to further review the responsibilities of being a committee member. She testified that she "wanted to make sure he understood this was an employee position and that he was not management." AR at 54. She then had Dotson fill out an "Affidavit of Experience" regarding his experience as a heavy equipment operator to ensure that he was an employee and understood the work processes and responsibilities of sitting on the committee.
¶ 10 Solt and Myers also submitted interest forms to Sigmund. Myers' resume, which Sigmund had requested, states that he was a general foreman for Wilder. His listed duties included overseeing and training others in pipe and grade installation, and in planning and implementing equipment use. Sigmund testified that Myers supervised apprentices but did not have the ability to hire or fire them.
¶ 11 Rutgers had served on the CITC apprenticeship committee before this court vacated the Council's approval of it. He agreed to serve as an alternate and submitted an Affidavit of Experience stating that he had been an operator for nine years and was "not part of [his] company's management team." AR at 172.

C. Knowledge/Experience Of Committee Members

¶ 12 CITC submitted evidence that all its primary proposed committee members worked for training agents and that all the employee committee members were journey-level operators. In addition to the employee committee members, there were three employer members: Tim Whiteis, Roderick Majors, and Phil Bogardus. Only some of the committee members had specific apprenticeship experience.[7] Whiteis had never served as an instructor for the CITC apprenticeship program or on the apprenticeship committee, and the record is silent as to any apprenticeship experience for Dotson.
¶ 13 Sigmund testified that after the committee representatives were chosen, she held an apprenticeship committee meeting where she gave them CITC standards, some Washington Administrative Code (WAC) sections, and some Washington statutes (RCW). They talked specifically about the standards, but she did not instruct them to read all the materials; that information was "more for their reference." AR at 71. Myers, Majors, and Whiteis did not attend the meeting, and at the time of her testimony, she had not yet sent them the materials because she preferred to meet with them first.

II. Council Meeting
¶ 14 The Council scheduled its consideration of CITC's program for its next regular *510 meeting. Before the meeting, both the JATCs and the CITC submitted briefs. The JATCs argued that (1) the Council should not approve the CITC committee because there was no assurance that the three employee-side members were "employee representatives," and (2) the CITC had failed to demonstrate that it actually provided practical hands-on training in a manner reasonably consistent with that of existing programs. AR at 211. The JATCs also challenged several proposed committee members individually: (1) Myers for being a "second-level supervisor[ ] for management" rather than an employee, and (2) Whiteis, Dotson, and Bogardus for not being "knowledgeable about apprenticeship." AR at 213-14.
¶ 15 The JATCs wrote the Council Chair, asking whether the Council would be permitting oral argument of the case. An attorney from the Labor & Industries Division of the Attorney General's Office responded with the following:
I . . . expect that the Council will handle this matter when it comes up on the agenda as they normally handle programs appearing for approval, which is to have a representative of the program present to answer any questions which members of the Council may have prior to voting on the matter on Friday. If Council members ask questions of CITC, I would expect that they would allow objectors to respond to CITC's answers as well.
AR at 235.
¶ 16 At the hearing, the Council asked Sigmund several questions, the first of which was how the employee committee members were selected. Sigmund responded that several years earlier, the CITC had developed an "eight-step process . . . to address this RCW."[8] AR at 242. The first step was sending a letter to current training agent employers, asking them to copy and insert an employee participation request with the job description in all journey level workers' paychecks. Interested employees would be given four weeks to respond to the request. Sigmund would contact each respondent to discuss committee member responsibilities at length. Then each interested individual would be given an Affidavit of Experience to sign, stating his or her years of experience in the trade and awareness of a committee member's role. If there were more volunteers than positions, the final members would be randomly selected by a neutral third party, and any remaining individuals would become alternates. Sigmund stated that after the selection process took place, a meeting was set up with the new committee members to review the program standards and the administrative regulations pertaining to apprenticeship. They would each be given a binder with the last six months of meeting minutes, a copy of the standards, a copy of the statutes and regulations, and contact information for Sigmund and all committee members.
¶ 17 The JATCs' counsel objected to this explanation as "contrary to the testimony that was given at the special hearing" because there, Sigmund had testified that the employee committee members were selected by a phone call to the management representatives. AR at 244.
¶ 18 Another council member initiated the following exchange with Sigmund:
CHAIRWOMAN NICHOLS: Historically for your other approved programs, was this a process that was utilized in order to select committee members?
MS. SIGMUND: Yes.
CHAIRWOMAN NICHOLS: Have you articulated, before, the description of how you choose your committee members?
MS. SIGMUND: No. It's never been requested, other than that they're volunteers.
AR at 246-47. At that point, one council member expressed his recollection from previous program approvals that the CITC selected its employee committee members during employee safety meetings where the employees met and discussed who they wanted to represent them. Sigmund did not recall saying that. The council member then asked CITC's counsel, Judd Lees, if he *511 "remember[ed]" what CITC's selection process had been. AR at 248.
¶ 19 Lees represented that "because of the timing of the Court of Appeals decision and the quarterly Council meeting, CITC needed to get a committee to the Council as quickly as possible in the hopes that it would act on it at the January, 2006 meeting." AR at 249. So, of the four proposed employee representatives, two were not selected by the eight-step process because they had already been committee members before this court vacated the committee approval.[9] Sigmund later stated that those two "would have gone through" the eight-point process originally. AR at 253. As for the other two, Lees represented that Solt was directly "approached by ... Sigmund [because] he was a JATC [Joint Committee] grad." AR at 249. Dotson was secured when Sigmund contacted his employer directly and said, "Are there any people there that would like to serve?" or "Could you get the word out and have the individual contact me." AR at 250, 255. Dotson had no experience either on the CITC committee or in its program, so Sigmund met with him to review the standards, RCWs, and WACs.
¶ 20 The JATCs' counsel again objected that "[t]here are a lot of comments from the lawyers, some comments from Halene Sigmund. None of this is under oath," and then asked the Council to make its determination based only on the testimony at the adjudicative hearing. AR at 256.

III. The Council's Decision
¶ 21 The next day, the Council voted four to three to approve the CITC's committee and standards. In its findings of fact and conclusions of law, the Council found that CITC had amended its proposed program standards to reflect that RSI would consist of 60 to 80 percent practical training, and that it was therefore reasonably consistent with existing program standards in the same trade. It also found the following regarding the CITC committee:
CITC has solicited both its employer and its employee committee members by contacting its training agents (employers with apprentices in CITC's program), and asking the employers to solicit volunteers for the committee.... CITC had no direct general contact with employees or employee organizations in obtaining names for and selecting employee committee members for their committee, however Halene Sigmund did confirm in discussion with each of the employee committee volunteers that they understood the duties of an employee committee member, and she has indicated that she is prepared to provide each of the committee members, whether employer or employee, with the necessary information for them to understand the law governing apprenticeship, the program standards and their duties in administering the law and the standards.... The nonmanagement representatives come from the group of employees who are served by this apprenticeship committee.
AR at 274-75.
¶ 22 The Council then approved CITC's program standards and the committee, concluding:
CITC's three employer committee members... have, or will be given, adequate information regarding the program and apprenticeship in general to function effectively as apprenticeship committee members....
... There is no indication that [the employee representatives] are other than employees, and the sponsor provided information which confirms that all of the representatives selected  both management and nonmanagement  come from the group served by the apprenticeship committee (contractors utilizing construction equipment operators). Further, the Council has previously approved nonmanagement representatives selected in a similar manner. In July of 2000, the Council minutes indicate that the original approval of CITC's Construction Equipment Operator committee was based on a determination that selection was based on volunteer participation from appropriate contractors *512 with journey level experience. The employee committee members have, or will be given, adequate information regarding the program and apprenticeship in general to function effectively as apprenticeship committee members.
AR at 275-76.
¶ 23 The Council sent an "official copy" of the approved standards to CITC a month later. AR at 278. The version sent out (and published) did not include the amendments regarding an apprentice's appeal rights or the requirement of 60 to 80 percent practical training.

IV. Judicial Review
¶ 24 The JATCs filed a petition for review with the Thurston County Superior Court. After briefing and argument, the trial court denied the petition, holding that "the Council made the findings necessary to approve the standards." Clerk's Papers at 87.

ANALYSIS
¶ 25 We review a final agency order under RCW 34.05.570. Operating Eng'rs I, 130 Wash.App. at 517, 123 P.3d 533. The party challenging the agency action must demonstrate its invalidity under the standards applicable at the time it was taken, and our review is limited to the record before the agency. RCW 34.05.570(1)(a), (b); .558; Operating Eng'rs I, 130 Wash.App. at 517, 123 P.3d 533 (citing Port of Seattle v. Pollution Control Hearings Bd., 151 Wash.2d 568, 587, 90 P.3d 659 (2004)).[10] Although we grant deference to an agency's findings of fact, we review its legal decisions de novo, giving substantial weight to the agency's interpretation of the statute it administers but not deferring to any interpretation that is implausible or contrary to legislative intent. Mader v. Health Care Auth., 149 Wash.2d 458, 470, 70 P.3d 931 (2003); King County v. Cent. Puget Sound Growth Mgmt. Hearings Bd., 142 Wash.2d 543, 553, 14 P.3d 133 (2000); Operating Eng'rs I, 130 Wash.App. at 518, 123 P.3d 533 (citing Cobra Roofing Serv., Inc. v. Dep't of Labor & Indus., 122 Wash.App. 402, 409, 97 P.3d 17 (2004), aff'd, 157 Wash.2d 90, 135 P.3d 913 (2006)). We do not defer to the trial court where its review did not entail the taking of any additional evidence. Operating Eng'rs I, 130 Wash. App. at 518, 123 P.3d 533.
¶ 26 We can grant relief to the petitioner on various statutory grounds including that: (1) the agency has engaged in unlawful procedure or decision-making process, or has failed to follow a prescribed procedure, (2) the agency has erroneously interpreted or applied the law, (3) the action is not supported by evidence that is substantial, or (4) the action is arbitrary or capricious. RCW 34.05.570(3)(c)-(e), (i).
¶ 27 The JATCs contend that the Council erred in (1) soliciting unsworn testimony from Sigmund about CITC's committee selection process that was not subject to cross-examination, (2) relying on its prior approval of CITC's committee selection process, (3) concluding that CITC's apprenticeship committee selection process satisfied the requirements of RCW 49.04.040, (4) concluding that each proposed member of the CITC committee was "knowledgeable" under WAC 296-05-313(4), and (5) finding CITC's program standards reasonably consistent with those of existing programs.

I. Committee Selection Process
¶ 28 We first consider the JATCs' evidentiary and procedural challenges because those issues will define the scope of the record on review. See RCW 34.05.570(3)(e) (reviewing for substantial evidence "in light of the whole record before the court"). The JATCs argue that the Council improperly (1) relied on unsworn "testimony" by Sigmund that was not subject to cross-examination and (2) took "official notice" of non-record facts without notice to the parties when it relied on its prior approval of CITC's committee selection process. Br. of Appellant at 18.
¶ 29 RCW 34.05.422(1)(b) requires that unless otherwise provided, "applications *513 for licenses that are contested by a person having standing to contest under the law ... shall be conducted as adjudicative proceedings."[11]See also RCW 34.05.010(1) (adjudicative proceedings include all cases in which the granting of an application is contested by a person having standing to contest under the law); WAC 296-05-008(3) (requiring adjudication of objections to apprenticeship program standards). The JATCs have such standing. See Seattle Bldg. & Constr. Trades Council v. Apprenticeship & Training Council, 129 Wash.2d 787, 798, 920 P.2d 581 (1996); Operating Eng'rs I, 130 Wash. App. at 522, 123 P.3d 533.
¶ 30 Adjudicative proceedings regarding apprenticeship are conducted under Washington's Administrative Procedure Act (APA), specifically RCW 34.05.413 through.476, and the Model Rules of Procedure in chapter 10-08 WAC. WAC 296-05-007; see RCW 34.05.410(1). The Council may either adjudicate the matter itself or refer it to the office of administrative hearings for initial adjudication. WAC 296-05-007; WAC 296-05-008(3). The rules of evidence for administrative adjudicative proceedings are governed by RCW 34.05.452 and WAC 10-08-140 through -160. The former requires that "[a]ll testimony of parties and witnesses shall be made under oath or affirmation," RCW 34.05.452(3), and WAC 10-08-160(1) requires that "[e]very person called as a witness in a hearing shall swear or affirm that the testimony he or she is about to give in the hearing shall be the truth according to the provisions of RCW 5.28.020 through 5.28.060."
¶ 31 Here, the Council conducted two substantive hearings on the topic of CITC's committee selection process: (1) an adjudicative hearing on February 16, 2006, that took testimony under oath from Sigmund and (2) a public meeting during which Council members solicited substantive information on the same topic from both Sigmund and Lees, with neither of them under oath. The Council provides no justification for the unsworn testimony,[12] instead interpreting the JATCs' challenge on appeal as limited to one question and answer with Sigmund concerning the Council's prior approvals of the CITC process. If the unsworn testimony had been limited to this one comment by Sigmund, we could remedy the error by simply limiting our review to the sworn testimony in the first hearing.
¶ 32 But the Council's questioning of Sigmund at the second hearing was far more substantial than a single question and answer exchange. The Council asked for and obtained a full explanation on an ultimate factual question: "Can you tell us how those employee committee members were selected?" AR at 242. Sigmund responded with a detailed explanation of an "eight-step process" that had not been mentioned at the first hearing. AR at 242. The eight-step process, of all the selection methods described over the course of this case, has the best chance of satisfying the requirements of RCW 49.04.040 if it was followed. But after Sigmund's description of it, the Council asked CITC's attorney, Lees, what he remembered CITC's process to have been. Lees then explained that while the CITC did have an eight-step process in place, it had not followed it for the selection of the committee in question because CITC had been in a hurry to resume business with its operator apprenticeship program after this court's mandate. In doing so, Lees himself became a witness who established facts that appeared nowhere else in the record.
¶ 33 We cannot assume that the Council ignored this information and relied only on sworn testimony taken at the first *514 hearing.[13] As the Supreme Court noted in Seattle Bldg., "[a]bsent compliance with [the oath requirement] and other procedural requirements, judicial review of the merits of agency action is significantly hampered and may even be effectively foreclosed." Seattle Bldg., 129 Wash.2d at 804, 920 P.2d 581. Sigmund's statements in the second hearing significantly illuminated and sometimes contradicted her earlier testimony. Yet the question of what constitutes a permissible manner of selecting committee members under RCW 49.04.040 is a novel one; in this situation, clarity of the facts is particularly important. We remand to the Council for a formal adjudicative hearing on the manner that CITC actually used to select each member of its apprenticeship committee.[14],[15]

II. Knowledgeable Committee Members
¶ 34 WAC 296-05-313(4) requires that "[a]ll committee members must be knowledgeable in the process of apprenticeship and/or the application of chapter 49.04 RCW and these rules." The Council approved CITC's committee members, finding that all of them "have, or will be given, adequate information regarding the program and apprenticeship in general to function effectively as apprenticeship committee members." AR at 275.
¶ 35 The JATCs challenge the Council's approval only of Whiteis, Dotson, and Bogardus, for whom CITC demonstrated no background in apprenticeship. Specifically, they argue that WAC 296-05-313(4) "does not provide a probationary or in-training period for obtaining the requisite knowledge after appointment to the committee." Br. of Appellant at 16. Rather, the representative must be "knowledgeable" at the time he or she is selected. Further, according to the JATCs, the Council misinterpreted its regulation and erroneously applied the law in acquiescing to CITC's assurance that the members "will be given" the necessary knowledge in the future. Br. of Appellant at 17. Because we do not know who will be proposed as committee members on remand or what the qualifications for each will be, we address only the legal standard: must a proposed member be knowledgeable at the time of appointment.
¶ 36 The Council promulgated WAC 296-05-313(4) under the statutory authority of RCW 49.04.010, which authorizes it to "issue such rules as may be necessary to carry out the intent and purposes of this chapter." In addition, RCW 49.04.040 requires that apprenticeship committees conform to chapter 49.04 RCW and "the rules adopted by the apprenticeship council" and "be approved by the apprenticeship council." *515 These provisions give the Council the discretionary authority to create rules to regulate the qualifications for being an apprenticeship committee member. But they do not dictate how stringent those qualifications must be, particularly as to a member's "knowledge," which the statute does not address. Generally, we give considerable deference to an agency's interpretation of its regulations. Silverstreak, Inc. v. Dep't of Labor & Indus., 159 Wash.2d 868, 884, 154 P.3d 891 (2007). This high level of deference is appropriate because the agency has expertise and insight in administering the regulation that reviewing courts do not possess. Silverstreak, 159 Wash.2d at 885, 154 P.3d 891.
¶ 37 But as in statutory interpretation, we begin by considering whether the regulatory language is ambiguous. Silverstreak, 159 Wash.2d at 881, 154 P.3d 891. Here, although section 313(4) does not specify as to when a committee appointee must be knowledgeable, that alone does not make the rule ambiguous. Rather, a statute or rule is ambiguous if it is capable of more than one reasonable meaning. Cannon v. Dep't of Licensing, 147 Wash.2d 41, 56, 50 P.3d 627 (2002). We give rules and regulations a rational, sensible interpretation. Cannon, 147 Wash.2d at 57, 50 P.3d 627.
¶ 38 The Council broadly interpreted the "knowledgeable" requirement to allow CITC to appoint a candidate with no known experience or knowledge of the apprenticeship process. Such a reading of the rule renders it meaningless. Anybody would qualify as long as CITC promised to educate the candidate. Such an interpretation would also partially limit the Council's authority to approve prospective committee members, leaving the Council with the somewhat nebulous task of monitoring a committee member's learning. We conclude that the rule can only be reasonably read to allow those appointees who have demonstrated experience and knowledge of apprenticeship programs when appointed. On remand, the Council must require CITC to establish that each proposed candidate is knowledgeable in the apprenticeship process.

III. Proposed Standards Regarding Practical Training
¶ 39 The JATCs argue that there is no substantial evidence to support the Council's decision that CITC's standards comply with WAC 296-05-316(26), which requires that "any proposed standards for apprenticeship are reasonably consistent with any standards for apprenticeship already approved by the [Washington State Apprenticeship and Training Council] for the industry," and that "the course content and delivery method must be designed to achieve the same levels of skills as existing standards within the state for that industry." Br. of Appellant at 20.
¶ 40 The first factual inquiry at issue in the approval process is whether CITC's standards are reasonably consistent with other council-approved programs. The only discrepancy between CITC's original standards and other approved program standards in the amount of practical training in RSI is: CITC required 50 percent practical training and the other programs required 60 to 80 percent. See Operating Eng'rs I, 130 Wash. App. at 525. On remand, the JATCs did not offer any evidence of any other discrepancies between CITC's standards and any other programs, so the only question before the Council was whether CITC's amendment (requiring 60 to 80 percent practical training) corrected that previous inconsistency. The Council was justified in finding that it did.
¶ 41 The second factual inquiry under WAC 296-05-316(26) is whether "the course content and delivery method [is] designed to achieve the same levels of skills as existing standards within the state for that industry, trade, or craft." The JATCs urge us to review this issue not by the written standards but by the evidence concerning how CITC was actually conducting its RSI. The Council responds that any inquiry into CITC's actual practice is "[c]ompliance review" that cannot occur until the standards have been approved and there is evidence that the program sponsors are not complying with them. Br. of Resp't at 28.
¶ 42 We agree with the Council; the "course content and delivery method" inquiry is limited to the program's design as it is *516 represented in its standards, not actual practice.[16]See WAC 296-05-316. In addition, neither party presented any evidence regarding either the "level of skills" achieved by the other approved programs or the "course content and delivery method[s]" they used to achieve it. Therefore, there was no basis on which to make the comparison contemplated in WAC 296-05-316(26), nor did the JATCs request the Council to do so. Under these circumstances, the Council did not err in it relying on the only issue raised  the amount of "practical training in RSI" required by the standards  to find that CITC's course content design was sufficient and to approve the program's substantive standards.

IV. Attorney Fees
¶ 43 The JATCs request its attorney fees and costs under RCW 4.84.350, which provides for a total award of fees and costs of up to $25,000 to "a qualified party that prevails in a judicial review of an agency action... unless the court finds that the agency action was substantially justified or that circumstances make an award unjust."
¶ 44 The JATCs have prevailed on its procedural challenge and its challenge to the Council's standard for "knowledgeable" candidates. Accordingly, we grant the JATCs its "fees and costs on appeal in an amount to be set by a commissioner of this court.
¶ 45 Reversed and remanded.
We concur: QUINN-BRINTNALL, J., and VAN DEREN, A.C.J.
NOTES
[1] As in the prior appeal, the Council is the named respondent and nominal party in interest, but the real party in interest is the Department of Labor & Industries (Department), which is charged with appointing the Council's members and monitoring its activities. See RCW 49.04.010. CITC is an "adverse party on review," so we also consider it a respondent in this appeal. Operating Eng'rs I, 130 Wash.App. at 513 n. 1 & 2, 123 P.3d 533 (citing RAP 3.4).
[2] The third challenge is no longer in dispute because CITC amended its standards to address the problem.
[3] The hearing was held for the sole purpose of making a record for the Council's review; it was not a decision-making Council meeting because a quorum of the Council's members was not present.
[4] RSI is a small part of the overall apprenticeship process. In the total required 7,000 hours, only 160 are RSI; the rest are on-the-job.
[5] A "training agent" is an employer that has apprentices through CITC.
[6] Myers was employed by Wilder Construction, which the Council asserts was also a training agent. This fact does not explicitly appear in the record, but may be inferred from the fact that at least two of Wilder's employees have been involved in CITC programs as either instructors or committee members.
[7] Solt had completed the CITC apprenticeship program. Myers was an instructor for the CITC apprenticeship program, and Majors had been an instructor in 2003-04. Bogardus had been an existing CITC committee member.
[8] RCW 49.04.040.
[9] Presumably Lees was referring to Myers and Rutger, although the record does not indicate that Myers had served on the committee; rather, he was a CITC instructor.
[10] Under this standard, the JATCs are correct that it had no burden to produce evidence at the agency's adjudicative hearing. Rather, it bears the burden now of convincing us that the agency acted improperly based on the evidence presented.
[11] RCW 34.05.010(9)(a) defines a license as "a franchise, permit, certification, approval, registration, charter, or similar form of authorization required by law."
[12] For instance, there is one case in which the Washington Supreme Court has exempted the oath requirement in the administrative context. In Swinomish Indian Tribal Comty. v. W. Wash. Growth Mgmt, Hearings Bd., 161 Wash.2d 415, 432 n. 6, 166 P.3d 1198 (2007), the Supreme Court held that the oath requirement was overridden by the "clear authorization for ex parte consultation with experts that ... RCW 34.05.455(1)(c) provide[s]." There is no such statutory provision justifying the unsworn substantive information solicited here.
[13] Cf. RCW 34.05.461(4) ("Findings of fact shall be based exclusively on the evidence of record in the adjudicative proceeding" and "on the kind of evidence on which reasonably prudent persons are accustomed to rely in the conduct of their affairs."); Robles v. Dep't of Labor & Indus., 48 Wash.App. 490, 494, 739 P.2d 727 (1987).
[14] We do not address the JATCs' argument that CITC's selection process ensured that employee members were employee "representatives" because we do not know what evidence CITC will offer on remand or what conclusions the Council will reach. For the same reason, we also do not reach the question of whether the Council took improper "official notice" of its prior approval of CITC's committee selection process.

In relation to the second argument, however, we do note that approval of a committee selection process is a mixed question of law and fact that "[a]nalytically ... requires [1] establishing the relevant facts, [2] determining the applicable law, and then [3] applying that law to the facts." Tapper v. State Employment Sec. Dep't, 122 Wash.2d 397, 403, 858 P.2d 494 (1993). The Council's prior approval of CITC's committee could be relevant to its subsequent considerations of the issue only if the facts from first determination are identical to the facts from the second. We doubt that this was the case in the decision before us today. On remand, the Council cannot base its approval of committee membership on past decisions based on different facts. Rather, the Council must (1) weigh and resolve the facts as they unfold solely from the forthcoming adjudicative hearing, (2) articulate an interpretation of the applicable statute, RCW 49.04.040, and (3) apply that interpretation to the facts. See Tapper, 122 Wash.2d at 403, 858 P.2d 494.
[15] Because our reversal vacates the Council's approval of CITC's apprenticeship committee, it also vacates the registration of CITC's program. See RCW 49.04.050 ("To be eligible for registration, apprenticeship program standards must conform to the rules adopted by the apprenticeship council"); WAC 296-05-300(2) (composition of the committee is a required part of the applicant's program standards).
[16] If the JATCs believe that CITC is not following its own standards once they are approved, they may bring a complaint to the supervisor of apprenticeship, who has the power to investigate and recommend to the Council that it cancel a program operating inconsistently with its established program standards. RCW 49.04.030; WAC 296-05-321.